# EXHIBIT 1

PLD-C-001

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Harvey M. Moore, Esq. 101128, Amy Lief, Esq.263419, Eleccia Barksdale, Esq. 297501,<br>Erin McKinley, Esq. 292865<br>The Moore Law Group, A Professional Corporation<br>3710 S. Susan Street, Suite 210, PO Box 25145 [92799], Santa Ana, CA 92704<br>TELEPHONE NO: 800-506-2652   FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* Plaintiff | FOR COURT USE ONLY<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**04/08/2015** at 08:00:00 AM<br><br>Clerk of the Superior Court<br>By Amy Wagoner,Deputy Clerk |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF   San Diego - North |
|---|
| STREET ADDRESS: 325 S. Melrose Drive |
| MAILING ADDRESS: Vista CA 92081 |
| CITY AND ZIP CODE: |
| BRANCH NAME: |

PLAINTIFF:  Barclays Bank Delaware

DEFENDANT:  Diana Rodrigo , an individual

☐ DOES 1 TO _____

| CONTRACT | |
|---|---|
| [X] COMPLAINT | ☐ AMENDED COMPLAINT *(Number):* |
| ☐ CROSS-COMPLAINT | ☐ AMENDED CROSS-COMPLAINT *(Number):* |

| | |
|---|---|
| **Jurisdiction** *(check all that apply):*<br>[X] ACTION IS A LIMITED CIVIL CASE<br> Amount demanded  [X] does not exceed $10,000<br>  ☐ exceeds $10,000 but does not exceed $25,000<br>☐ ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)<br>☐ ACTION IS RECLASSIFIED by this amended complaint or cross-complaint<br>  ☐ from limited to unlimited<br>  ☐ from unlimited to limited | CASE NUMBER<br><br>37-2015-00011631-CL-CL-NC |

1. Plaintiff* *(name or names):* Barclays Bank Delaware

  alleges causes of action against defendant* *(name or names):*  Diana Rodrigo, an individual

2. This pleading, including attachments and exhibits, consists of the following number of pages:  3
3. a. Each plaintiff named above is a competent adult
    [X] except plaintiff *(name):*   Barclays Bank Delaware
      (1) ☐ a corporation qua
      (2) ☐ an unincorporated entity *(describe):*
      (3) [X] other *(specify):* Commercial Bank supervised by the FDIC

  b. ☐ Plaintiff *(name):*
    a. ☐ has complied with the fictitious business name laws and is doing business under the fictitious name *(specify):*

    b. ☐ has complied with all licensing requirements as a licensed *(specify):*
  c. ☐ Information about additional plaintiffs who are not competent adults is shown in Attachment 3c.

4. a. Each defendant named above is a natural person
    ☐ except defendant *(name):*                                  ☐ except defendant *(name):*
      (1) ☐ a business organization, form unknown         (1) ☐ a business organization, form unknown
      (2) ☐ a corporation                                           (2) ☐ a corporation
      (3) ☐ an unincorporated entity *(describe):*           (3) ☐ an unincorporated entity *(describe):*

      (4) ☐ a public entity *(describe):*                        (4) ☐ a public entity *(describe):*

      (5) ☐ other *(specify):*                                      (5) ☐ other *(specify):*

Page 1 of 2

*\* If this form is used as a cross-complaint, plaintiff means cross-complainant and defendant means cross-defendant.*

Form Approved for Optional Use<br>Judicial Council of California<br>PLD-C-001 [Rev. January 1, 2007]

**COMPLAINT—Contract**

Code of Civil Procedure, § 425.12<br>American LegalNet, Inc.<br>www.FormsWorkflow.com

PLD-C-001

| SHORT TITLE: Barclays Bank Delaware v. Diana Rodrigo | CASE NUMBER: |
|---|---|

4. *(Continued)*

    b. The true names of defendants sued as Does are unknown to plaintiff.

        (1) ☐ Doe defendants *(specify Doe numbers):* _____ were the agents or employees of the named defendants and acted within the scope of that agency or employment.

        (2) ☐ Doe defendants *(specify Doe numbers):* _____ are persons whose capacities are unknown to plaintiff.

    c. ☐ Information about additional defendants who are not natural persons is contained in Attachment 4c.

    d. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

5. ☐ Plaintiff is required to comply with a claims statute, and

    a. ☐ has complied with applicable claims statutes, or

    b. ☐ is excused from complying because *(specify):*

6. ☐ This action is subject to ☐ Civil Code section 1812.10 ☐ Civil Code section 2984.4.

7. This court is the proper court because

    a. ☐ a defendant entered into the contract here.

    b. ☐ a defendant lived here when the contract was entered into.

    c. ☒ a defendant lives here now.

    d. ☐ the contract was to be performed here.

    e. ☐ a defendant is a corporation or unincorporated association and its principal place of business is here.

    f. ☐ real property that is the subject of this action is located here.

    g. ☐ other *(specify):*

8. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*

    ☐ Breach of Contract

    ☒ Common Counts

    ☐ Other *(specify):*

9. ☐ Other allegations:

10. Plaintiff prays for judgment for costs of suit; for such relief as is fair, just, and equitable; and for

    a. ☒ damages of: $ 5012.17

    b. ☐ interest on the damages

        (1) ☐ according to proof

        (2) ☐ at the rate of *(specify):* _____ percent per year from *(date):*

    c. ☐ attorney's fees

        (1) ☐ of: $

        (2) ☐ according to proof.

    d. ☒ other *(specify):* Costs of suit

11. ☐ The paragraphs of this pleading alleged on information and belief are as follows *(specify paragraph numbers):*

Date: April 7, 2015

Amy Lief, Esq. /Eleecia Barksdale, Esq./Erin McKinley, Esq. ►
_____
(TYPE OR PRINT NAME)                     (SIGNATURE OF PLAINTIFF OR ATTORNEY)

*(If you wish to verify this pleading, affix a verification.).*

PLD-C-001(2)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Barclays Bank Delaware v. Diana Rodrigo | |

___FIRST___  **CAUSE OF ACTION—Common Counts**
(number)

ATTACHMENT TO  [X] Complaint   [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

CC-1. Plaintiff *(name):*  Barclays Bank Delaware

alleges that defendant *(name):*  Diana Rodrigo

became indebted to   [X] plaintiff   [ ] other *(name):*

a.  [X]  within the last four years
    (1) [X]  on an open book account for money due.
    (2) [X]  because an account was stated in writing by and between plaintiff and defendant in which it
         was agreed that defendant was indebted to plaintiff.

b.  [X]  within the last  [ ] two years  [X] four years
    (1) [ ]  for money had and received by defendant for the use and benefit of plaintiff.
    (2) [ ]  for work, labor, services and materials rendered at the special instance and request of defendant
         and for which defendant promised to pay plaintiff.
         [ ]  the sum of $
         [ ]  the reasonable value.
    (3) [ ]  for goods, wares, and merchandise sold and delivered to defendant and for which defendant
         promised to pay plaintiff
         [ ]  the sum of $
         [ ]  the reasonable value.
    (4) [X]  for money lent by plaintiff to defendant at defendant's request.
    (5) [X]  for money paid, laid out, and expended to or for defendant at defendant's special instance and
         request.
    (6) [X]  other *(specify):*  This cause of action relates to the credit card issued by
                      Plaintiff having account number XXXXXXXXXXXXX5101.

CC-2. $ 5012.17     , which is the reasonable value, is due and unpaid despite plaintiff's demand,
plus prejudgment interest   [ ] according to proof  [ ] at the rate of _____ percent per year
from *(date):*

CC-3. [ ]  Plaintiff is entitled to attorney fees by an agreement or a statute
        [ ]  of $
        [ ]  according to proof.

CC-4. [X]  Other:  Costs of suit

                                                3
Page

Form Approved for Optional Use
Judicial Council of California
PLD-C-001(2) [Rev. January 1, 2009]

**CAUSE OF ACTION—Common Counts**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

# EXHIBIT   2

# JUNIPER

## Credit Card Cardmember Agreement

## Cardmember Bill of Rights

## Juniper Privacy Policy

## Frontier Early Returns Program

## Terms and Conditions

**Retain for your records**

## JUNIPER BILL OF RIGHTS

We promise to give you:

1. Unparalleled Customer Focus — Respect. Courtesy. Empathy. These values form the bedrock of Juniper Bank, member of the Barclays Group. You'll see these values in action each and every time we interact.

2. Help How You Want It — We make it easy for you to do business with us 7 days a week. Simply choose how you want to contact us, e-mail, toll-free telephone or written correspondence, and on the other end there will be a Relationship Manager specially trained and empowered to service your needs.

3. Personalized Products and Services — Your financial products and services will be designed with the objective of enhancing your financial status, while making your life easier.

4. Fair Pricing — Our prices and how you will be assessed will be clearly disclosed and highly competitive.

5. Information Security — Your personal data will be protected from unauthorized access by state-of-the-art systems and facilities. Access to personal information will be strictly limited to those with a need to know.

6. Privacy Protection — Our privacy policies will be prominently disclosed in our agreements and on our web site. Information about you will only be given to merchants with your express permission.

7. Fast, Accurate Information — Transactions are to be executed quickly and without error. We will ensure that your records, payment postings, billing statements, and credit reports are accurate and up-to-date. If, despite our best efforts, an error does occur, we will own up to it and correct it promptly.

8. Easy Dispute Resolution — We will provide an efficient, user-friendly process to acknowledge, review and resolve disputes. If a problem is not resolved to your satisfaction in a timely manner, you have the right to contact your Relationship Manager.

9. Consumer Education — We will provide you with consumer information so that you can enhance your financial well-being while minimizing the time you spend on financial matters. And if you don't want this information, just say so.

10. Plain Language — We hate fine print and "legalese" just as much as you do. We will always try to be up-front, clear and easy to understand when we communicate with you.

## PRIVACY POLICY

### Privacy

At Juniper Bank, member of the Barclays Group, we respect your right to personal privacy, online and off. Our privacy policy has been verified by BBBOnLine Privacy Program, an independent organization that objectively reviews and audits privacy and security practices to promote trust and confidence on the internet. More information about BBBOnLine is available at www.bbbonline.org. Our Privacy Policy is designed to provide you with protection and value. And it's written in "plain English." Here are the highlights:

- We do not sell information about you or your accounts.
- When we share information, it is only according to the guidelines described in the Juniper Privacy Policy.
- We do not share information with third party marketers unless you expressly authorize us to share the information.
- You control how we contact you. As described in our Privacy Policy, you may exercise your options on line, by mail or by phone.

We have developed state-of-the-art security to protect against the misuse of your information.

Our Privacy Policy will evolve to meet the changing world in which we operate and we will promptly advise you of any change.

I invite you to read our Privacy Policy below. If you have any questions or if anything is unclear, please visit our website at www.Juniper.com, email us at Privacy@Juniper.com or contact our Customer Service Center at 1-888-232-0780.

Larry Drexler

Good Counsel

Juniper Bank, member of the Barclays Group

**Juniper Privacy Policy.** Juniper Bank, member of the Barclays Group believes that Privacy is a cornerstone of our customer relationship. In designing our business, we strive to find methods to guard your privacy while affording you opportunities to save time and money.

- We do not sell information about our customers, their accounts or transactions to others for their use. We do share information as described in this Privacy Policy.

- We do not share information about your accounts or transactions except in the limited circumstances described below.
- When we do share information it is limited to the information necessary for the particular circumstance and only under strict controls to prevent misuse.
- We restrict access to the information we obtain about you to only those employees and service providers who need to know that information to provide you products or services.
- We maintain physical, electronic and procedural safeguards that comply with federal regulations to guard against misuse of the information we obtain.

## YOUR PRIVACY OPTIONS

### Offers of Goods and Services.

Juniper provides a number of information-sharing options. If you access your Account online, select the Alerts/Profile page where you can choose not to accept offers for (a) financial products from Juniper, its affiliates, and financial institutions with which Juniper partners and/or (b) offers of goods and services from unaffiliated merchants. You can also elect the method by which you will receive the offers: mail, e-mail, or telephone.

You may also exercise or change your choices by writing or by calling our Customer Service Center. If you do not contact us to make an election or enter your preferences online, we will send you offers for products and services from Juniper, its affiliates, and financial marketing partners, as well as offers of third-party goods and services by mail, e-mail and telephone. (We will, of course, contact you regarding your Account and related items regardless of your election.)

If you would like to review or change your election you may do so, at any time, by visiting our website at www.Juniper.com, by calling us at 1-888-232-0780 or by writing to Juniper Bank, P.O. Box 8801, Wilmington, DE 19899-8801.

### Collection of Information.

Juniper collects customer information from a variety of sources:

1) Application information (the information you provide us on your applications and other forms such as names, addresses, telephone numbers, birthday, social security numbers, level of family income, employer's name, and employer's address);

2) Transaction information (your transactions with us and with our affiliates and partners, and your use of our products);

3) Credit reports (information from consumer reporting agencies);

4) Correspondence (the information you provide when communicating in writing, online, or by phone with our Customer Service Center, as well as our response and follow-up correspondence with third parties concerning, for example, resolution of disputed transactions);

5) Marketing partners and publicly available databases. (We receive information from our marketing partners, e.g., colleges, universities, charities, financial institutions, and other businesses and public databases, which are used to help us serve you.)

We use this information to evaluate your applications, establish and maintain your Accounts, carry out your transactions, provide you with high-quality service, prevent fraud, and, unless you instruct us otherwise, inform you of offers for other Juniper products as well as products and services offered by third parties. We may also use this information to confirm your identity when you call us to inquire about your Accounts.

### Cookies.

"Cookies" are small computer files that are automatically placed on your computer's hard drive when you are connected to a website or remote server so that the website can recognize you upon your return to the website and tailor your experience based on your earlier use of the site. "Action tags" (also known as Web Beacons, Trackers, or Bugs) are invisible pixel .gif files placed on web pages that are used to track web navigation to those pages.

Juniper uses a cookie for each computer that visits its site. The cookie is integral to the customer experience and is necessary to use our online services. It allows Juniper to customize the website presentation based on your Accounts. While cookies, including Juniper's, can be disabled, if you disable our cookie you will not be able to use our website.

The Juniper cookie does not collect information from your hard drive; rather, it allows us to recognize you and know how you navigated through our site. It is also part of our effort to detect and stop fraud.

Cookies may be used by our partners who have links on our website. These cookies allow those vendors to recognize you and monitor your use of the site. For more information about their use of cookies, see their privacy policies, links to which are available in the online version of this Privacy Policy.

Juniper also places web advertisements that link to our site from other websites. The companies that place or "serve" the advertisements use their own cookies, which are different from the cookie on the site on which the advertising appears. The cookies used by the companies that serve ads for Juniper do not track your name, address, e-mail address, or

phone number. The ad server's cookie does recognize your computer and allows the ad server to determine automatically which ads to show you, based on your use of the Juniper site, other sites you have visited, and ads you have previously seen and/or responded to. The ad server also uses action tags to understand how a person navigated on our site after responding to one of our banner ads. This information is never linked to an individual and is only used in aggregate with other information generated by visitors to our site. You have the right to elect not to participate in this anonymous tracking of information, which is used to select which ads to display when you visit certain websites. In order to determine your comfort level with these companies' information practices, you should review their privacy policies. Juniper posts links to the privacy policies of the advertising companies it is currently using in the online version of this policy. Click on the advertiser name to go to its website to learn more about that agency's privacy policy, its use of cookies and action tags, and the options available to you in relation to those cookies. At present, Juniper does not include advertising on its own website. To the extent Juniper does allow advertisements, we will post a link from our online Privacy Policy to the privacy policy of agencies serving the ads. Juniper recommends that you review each site's privacy policy including their use of cookies to understand the site's information-handling practices and your options.

**Sharing Information.**
Juniper Bank, member of the Barclays Group may disclose information about you to the following types of third parties: service companies (companies that provide services to Juniper in order to process transactions, provide statements, maintain our website and provide customer service, including customer contact); affiliates (companies owned by Juniper's owner Juniper Financial Corp.); non-financial companies (merchants who offer non-financial goods and services to our customers); partners (universities, colleges, charities, and financial institutions through which we market products); financial service providers (companies with which we partner to market financial products, such as those participating in our Loan Center); and credit bureaus, collection agencies, law enforcement regulators, and professionals such as lawyers and accountants. Outlined below is the information shared with each type of third party and, as appropriate, your options.

**i. Juniper Financial Corporation and Affiliates.**
Juniper Financial Corp. is a Delaware bank holding company that owns Juniper Bank, member of the Barclays Group. Both Juniper Financial Corp. and Juniper Bank are owned by Barclays PLC family of Companies. As stated in our Account Agreements and applications, we may share information with our affiliates (companies that are at least 50 percent owned by Barclay PLC Juniper Financial Corp). The information sharing by affiliates may be related to one or more of four areas: servicing your Account; regulatory and legal compliance; fraud and loss protection; and/or furnishing information about offers of goods and services offered by our affiliates. You may elect not to receive offers from our affiliates, and thereby prevent information from being shared for that purpose, by visiting us online at www.Juniper.com or by calling our Customer Service Center at 1-888-232-0780. For more information regarding your options regarding information sharing with our affiliates, see "Your Privacy Options".

**ii. Sharing Information with Service Companies.**
In order to provide quality service and statements, both online and offline, Juniper Bank, member of the Barclays Group contracts with service providers for essential roles in processing transactions, producing statements and providing customer service including contacting customers. We may disclose some or all of the information we collect to these processors and service providers but only the information needed to provide the service. Each of Juniper's service providers has entered into a contract with Juniper that forbids them from using information provided by Juniper for any purpose other than providing the service for Juniper customers. Juniper takes security precautions to monitor the use of the information and prevent the use of the information for any other purpose.

**iii. Information Sharing with Merchants.**
Juniper does not share any information with unrelated merchants for the purpose of extending offers of goods and services without your consent. The manner and use of information varies according to the method used to deliver the offer.

  a. Mail and e-mail offers. We may provide offers of goods and services to you by mail and email without sharing information with the merchants who provide these goods and services. We do this by controlling the process by which the offers are extended. For example, a merchant wants to make a discount offer to Juniper Account holders. Based on our knowledge of our customers, we select the Account holders we believe will most likely be interested in the offer and arrange to have a service provider mail or e-mail the offer to you under the same security precautions we use to send a monthly statement. The only information we provide the mail or e-mail service provider is your name and address. Our contract with the service provider prohibits use of the name and address for any other purposes, and we take security precautions to monitor compliance. The merchant gets no information about you unless, and until, you respond to the offer. For more information about consent to receive offers, see "Your Privacy Options" on page 1.

  b. Phone offers. Juniper may provide offers of goods and services by telephone. In doing so, we do not disclose any of your personal information to merchants on whose behalf

we extend offers of goods and services. To the extent we engage a service provider to assist us in extending the offer, the only information we will provide the service provider is your name, address, phone number, and an internal reference number. We provide your name, address, and phone number to allow our service provider to contact you. The internal reference number cannot be used to process a charge to your Account. The internal reference number is used by the service provider to advise Juniper that you have agreed to a transaction. When you accept an offer, Juniper uses the internal reference number to match the transaction to your Account to allow the transaction to be processed without you giving your Account number over the phone. This process provides two advantages: first, it minimizes the possibility of misuse of your Account by limiting those with access to your Account number; and second, you know that the offer is being extended by Juniper and will include a generous return and refund policy to allow you to shop in confidence. We also take security precautions to monitor and prevent misuse of the information provided to the service provider. For more information about your consent to receive offers, see "Your Privacy Options" on page 1.

### iv. Information Sharing with Partners.

Juniper offers its products in conjunction with colleges, universities, charities, financial institutions, and other businesses. By joining Juniper through one of these endorsed relationships, you agree to the sharing of information with that partner. These relationships are clearly stated in the Account application, and by applying for these products you agree to the information sharing by Juniper and the partner, which may include: your name, address, phone number, and e-mail address. To the extent a program includes a rewards program or other benefit based on Account usage, we will provide the partner with information necessary to manage the program, including, as an example and not a limitation, number of transactions and dollar amount of purchases, payments, and credits. By applying for these products, you consent to sharing information necessary to support the particular program.

### v. Joint Marketing.

From time to time, we may enter into marketing agreements with other financial institutions to jointly offer a product. In these cases, we may share all information we collect about you to determine your eligibility for the products and to extend an offer to you. This information sharing will be subject to the same contractual restrictions and security precautions used for sharing information with service providers and vendors. Your options regarding these offers (and the sharing of information) are the same as those available for information sharing with an affiliate.

### vi. Credit Reports and Other Uses of Information.

In applying for an Account, you agree that we may request consumer credit reports from one or more credit reporting agencies in connection with your application and after the opening of your Account, the administration of your Account. You also authorize us to exchange credit information concerning you or your use of the Account with (and answer questions and requests from) others, such as merchants, other lenders, and credit reporting agencies.

We also share information with collection agencies, lawyers, accountants, auditors, bank regulators, and law enforcement as may be necessary in the administration of your Account or to respond to a legal inquiry or subpoena.

### Minors.

We do not knowingly offer products and services to minors. Similarly, we do not collect information about children, except to identify beneficiaries. Our application approval process is designed to identify applications submitted by children and to prevent their opening an Account. We may offer Uniform Gifts to Minor Accounts, which typically include the name of the minor but may only be opened with an adult signatory on the Account.

### Access to Account Information and Correction of Errors.

You have the right to access your Account details and transaction information, including your application. Sixteen months of statements are available on our website. If you have a question or believe there is an error on your Account, write, e-mail, or call us as soon as possible so as not to lose any rights. When contacting us be sure to include your name and Account number, along with a description of the error including the dollar value.

### Questions.

We are committed to customer service and privacy. If you have any questions, comments, or concerns regarding our Privacy Policy and its implementation, please do not hesitate to visit www.Juniper.com to send us an e-mail, or call us at 1-888-232-0780.

## JUNIPER BANK MEMBER OF THE BARCLAYS GROUP CARDMEMBER AGREEMENT

### Introduction.

This Agreement (and any amendments) establishes the terms of your Credit Card Cardmember Account ("Account") with Juniper Bank, member of the Barclays Group, Wilmington, Delaware. Please read it carefully and keep it with your records. You do not

need to sign this Agreement, but please sign the back of your credit card (the "Card"), if you have not already done so. All extensions of credit in connection with your Account are being made by Juniper Bank, member of the Barclays Group.

## Definitions.

"You" and "your" refer to each person who has applied for, accepted, or used the Account and each person who has agreed to be responsible for the Account. The words "we," "us" and "our" refer to Juniper Bank, member of the Barclays Group. If we use a capitalized term in this document but we do not define the term in this document, the term has the meaning as used in your monthly statement.

## Using Your Account/Acceptance of These Terms.

By signing, keeping or using your Card or Account, you agree to the terms and conditions of this Agreement. You may use your Card or Account to pay for goods, services or amounts owed wherever the Card is accepted ("Purchases"), to obtain funds using Convenience Checks and to transfer all or part of balances from Visa, MasterCard, American Express and Discover credit card accounts that you have with other banks or lenders ("Balance Transfers"). You also may use the Card to obtain cash loans ("Cash Advances") at any financial institution or automated teller machine that accepts the Card. You agree that we may credit your Account rather than issue cash refunds when you reverse transactions that were originally charged to your Account. You agree that you will not use your Card or Account in connection with any transaction that is prohibited or unenforceable and that if you do engage in such a transaction you waive any claim that the charge is uncollectible on the grounds the transaction was prohibited or unenforceable. The Card must be returned to us upon request. We may replace your Card with another Card at any time.

## Convenience Checks.

We may issue "Convenience Checks," which can be used to access your credit line. There is no grace period on Convenience Check transactions. Each Convenience Check will contain your Account number and may be used only by the person(s) whose name(s) is/are printed on it. Each must be completed and signed in the same manner as a regular personal check. If we provide Convenience Checks to you, you may not use them to pay any amount you owe under this Agreement or under any other account you may have with us. Unlike purchase transactions, there are no charge back rights with regard to Convenience Check transactions.

## Obligations on Your Account.

You authorize us to pay and charge your Account for all Purchases, Balance Transfers, Convenience Checks and Cash Advances made or obtained by you or anyone you authorize to use your Card or Account. You agree to pay us for all of these Purchases, Balance Transfers, Convenience Checks and Cash Advances, plus any finance charges assessed on your Account and any other charges and fees which you may owe under the terms of this Agreement, whether resulting from 1) physical use of your Card or Convenience Checks, 2) mail order or telephone, computer or other electronic transaction made without presenting the Card or 3) any other circumstances where you authorize a charge, or authorize someone else to make a charge, to your Account. Each person who has agreed to be responsible on the Account is responsible to pay the full amount owed on the Account. We may require that you pay the full amount owed without first asking any other person(s) to pay. Instructions for making payments are on your monthly billing statement. Payments that comply with the requirements specified on or with your monthly billing statement, including the time of receipt, will be credited on the business day they are received. There may be a delay of up to five (5) days in crediting payments that are not made in accordance with those instructions. All payments must be made in U.S. dollars. Any payment made by check or other negotiable instrument or direct debit must be drawn on a U.S. bank or a U.S. branch of a foreign bank. We reserve the right to accept payments made in a foreign currency. If we do, we will select the foreign currency rate at our discretion. Your available credit may not be increased by the amount of the payment until we collect the funds from the bank on which your payment is drawn. If you overpay or if there is a credit balance on your account, we will not pay interest on such amounts.

## Payment Allocation.

Subject to any mandatory provisions of applicable law, we will apply your payments to the balances on your Account in whatever manner we determine. In most instances, we will allocate your payments to balances with lower Annual Percentage Rates (APRs) before balances with higher APRs. This may result in balances with lower APRs (such as balances with introductory or promotional APR offers) being paid before any other existing balances.

## Credit Line/Authorized Usage.

Your credit line is shown on the folder containing your Card. We may change your credit line from time to time—either increase or decrease it—in our sole discretion. Your latest credit line will appear on your monthly billing statement. You agree not to make a Purchase, authorize a Balance Transfer, use a Convenience Check or obtain a Cash Advance that would cause the unpaid balance of your Account to exceed your credit line. We may honor Purchases, Balance Transfers, Convenience Checks and/or Cash Advances in excess of your credit line at our sole discretion. If we do, this Agreement applies to that excess and you

000007

agree to pay the excess immediately if we request that you do so. In addition, we may impose an over your credit line charge as set forth in the Table of Finance and Other Charges. You agree that we may change or cancel your credit line at any time without affecting your obligation to pay amounts that you owe under this Agreement. We may designate that only a portion of your credit line is available for Cash Advances. If we do and you exceed your line, you will be considered to have exceeded your credit line for all purposes of this Agreement. We may limit the authorizations to make Purchase, Cash Advance, Balance Transfer and/or Convenience Check transactions that may be accomplished with your Card or Account.

## Monthly Billing Statements.

We will send an electronic or a paper billing statement, unless otherwise agreed, at the end of each monthly billing cycle in which your Account has a debit or credit balance of more than $1.00 or if a finance charge has been imposed, unless we deem your account uncollectible or if delinquency collection proceedings have been instituted by sending your Account to an outside collection agency or attorney for collection. Among other things, your monthly statement will show your Current Balance, any finance charge, your credit line, available credit, Minimum Payment Due and the Payment Due Date. For those who receive electronic billing statements, we will send you monthly an e-mail to the e-mail address you provide us notifying you when your new statement is available. It is your responsibility to make sure that the e-mail address you provide us is current.

## Minimum Payment Due.

If the Current Balance shown on your monthly statement is less than $15, your Minimum Monthly Payment Due (due by Payment Due Date) is that Current Balance. Otherwise, the Minimum Payment Due for each billing cycle will be the greater of $15 or the total of 1) 2% of the Current Balance, plus 2) any applicable Annual Membership Charge, Stop Payment Fee, Duplicate Copy of Billing Statement Fee and/or Fast Card Fee assessed during statement period, plus 3) any amount past due, plus 4) if we so elect, any amount over your credit line at the time of billing. At any time, you may pay more than the Minimum Payment Due up to the full amount that you owe us. In the event your APR is greater than 23.99%, the Minimum Payment Due will be increased up to 1) 3% of the Current Balance, plus 2) any applicable Annual Membership Charge, Stop Payment Fee, Duplicate Copy of Billing Statement Fee, and/or Fast Card Fee assessed during statement period, plus 3) any amount past due, plus 4) if we so elect, any amount over your credit line at the time of billing.

## Accrual of Finance Charges and Grace Period.

We calculate the "balance subject to finance charge" separately for Purchases, for Balance Transfers and Convenience Checks, and for Cash Advances. On Purchases, finance charges begin to accrue as of the transaction date. However, you will have a grace period on Purchases (except for purchases of money orders, traveler's checks, foreign currency, lottery tickets, gambling chips or wire transfers, which are treated as Cash Advances for finance charge calculation purposes) and you will not pay a periodic finance charge on Purchases in any given billing cycle if you pay your Current Balance in full by the Payment Due Date on your current statement. For Balance Transfers and Convenience Checks a periodic finance charge will accrue from the day we send the Balance Transfer to the payee or the day the payee accepts the Convenience Check. For Cash Advances a periodic finance charge will accrue from the day you take the Cash Advance. There is no grace period on Balance Transfers, Convenience Checks and Cash Advances.

### Periodic Rate Finance Charges.

To determine the periodic rate finance charge, we apply the applicable Daily Periodic Rate, stated in the Table of Finance and Other Charges, on the back page of this booklet, to the daily balances of i) Purchases, ii) Balance Transfers and Convenience Checks, and iii) Cash Advances. The daily balances for Purchases, for Balance Transfers and Convenience Checks, and for Cash Advances are calculated separately and determined as follows: We take the beginning balances for each feature on your Account each day, including any periodic finance charges calculated on the previous day's balance, add to the respective balances any new transaction, subtract any payments or credits and make other adjustments. All charges (including but not limited to Other Interest Charges) are treated as Purchases except Balance Transfer Finance Charges and Transaction Finance Charges, which are treated as Balance Transfers, and Cash Advance Finance Charges, which are treated as Cash Advances. A credit balance is treated as a balance of zero. If you multiply the average daily balances as disclosed on your monthly billing statement by the number of days in the billing period and by the applicable Daily Periodic Rates, the results will be the finance charges assessed, except for minor variations caused by rounding. If we have "special" or "promotional" offers in effect from time to time, we will separately identify them on your monthly billing statement and separately disclose the balances to which such special offers apply. These separate balances and the related periodic finance charge will be calculated in the same manner as described above.

### Other Finance Charges.

We calculate another portion of the finance charge on your Account by adding a one-time Cash Advance Finance Charge on each Cash Advance when it is obtained. The amount of the Cash Advance Finance Charge is stated in the Table of Finance and Other Charges. If you use

your Card or account to do a Balance Transfer, we will charge a one-time Balance Transfer Finance Charge disclosed in the Table of Finance and Other Charges for each such Balance Transfer. If you use a Convenience Check, we will charge a Convenience Check Transaction Charge. If you purchase money orders, wire transfers, traveler's checks, lottery tickets, gambling chips or foreign currency, we will charge a one-time Transaction Finance Charge for each such transaction. The present amounts of those charges are stated in the Table of Finance and Other Charges. The total finance charges on your Account for a monthly billing cycle will be the sum of the periodic finance charges plus any Cash Advance, Balance Transfer or any Transaction Finance Charges. The minimum periodic rate FINANCE CHARGE in any billing cycle you owe a periodic rate finance charge is $1.00. This Agreement provides for compounding of finance charges (interest). Periodic finance charges are subject to change as described in the Table of Finance and Other Charges and the section entitled, "Changes in This Agreement."

**Other Interest Charges.**
In addition to the finance charges discussed above, we may assess the interest charges listed below. The current amount of such charges is stated in the Table of Finance and Other Charges.

**Late Charge**—If we do not receive a payment from you in at least the amount of your Minimum Payment Due by the Payment Due Date shown on your monthly statement, we may charge you a Late Charge. You may be charged one Late Charge for each Minimum Payment Due which is not paid by the Payment Due Date.

**Returned Payment Charge**—If your bank does not honor a check or direct debit you deliver to us, or we must return a check because it is not signed or is otherwise irregular, we may charge you a Returned Payment Charge.

**Returned Convenience Check Charge**—If we 1) stop payment on a Convenience Check at your request or 2) return a Convenience Check unpaid because it exceeds your available credit line at the time it is processed, your Account is closed or otherwise does not have charge privileges, you did not comply with our instructions regarding the check or your Account is past due, we may charge you a Returned Convenience Check Charge.

**Over Your Credit Line Charge**—If your account balance exceeds your credit line at any time during the monthly Billing Cycle, we may charge you an Over Your Credit Line Charge. This fee will be assessed even if fees or finance charges assessed by us caused you to exceed your credit line. The Over Your Credit Line Charge is not applicable to World Card or Signature Cardholders.

**Administrative Charges.**
If you request photocopies of monthly billing statements, or if you request any special services such as obtaining Cards on an expedited basis, you agree to pay our reasonable charges for such services, in effect at that time. The present charges for such services are specified in the Table of Finance and Other Charges.

**Default/Collection Costs.**
Unless otherwise prohibited by law, your Account will be in default and we may demand immediate payment of the entire amount you owe us if: 1) in any month we do not receive your Minimum Payment Due by the Payment Due Date; 2) you make Purchases, initiate Balance Transfers, use Convenience Checks or obtain Cash Advances in excess of your credit line; 3) you fail to comply with this Agreement; 4) there is a filing for your bankruptcy; 5) you die or become incapacitated; or 6) we believe in good faith that the payment or performance of your obligations under this Agreement is impaired for any other reason. As permitted by applicable law, you agree to pay all collection expenses actually incurred by us in the collection of amounts you owe under this Agreement (including court or arbitration costs and the fees of any collection agency to which we refer your Account) and, in the event we refer your Account after your default to an attorney who is not our regularly salaried employee, you agree to pay the reasonable fees of such attorney. We will not be obligated to honor any attempted use of your Account if a default has occurred or we have determined to terminate your Account or limit your Account privileges (as discussed below).

**Arbitration.**
Any claim, dispute or controversy ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or your Account, or any transaction on your Account including (without limitation) Claims based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions or any other source of law and Claims regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall be resolved exclusively and finally by binding arbitration under the rules and procedures of the arbitration Administrator selected at the time the Claim is filed. The Administrator selection process is set forth below. For purposes of this provision, "you" includes any authorized user on the Account, agents, beneficiaries or assign of you; and "we" or "us" includes our employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns. Claims made and remedies sought as part of a class action, private attorney

000009

F03-4997-2 CP06-447 37

not on a class or representative basis,

As an exception to arbitration you and we may pursue a Claim within the jurisdiction of the Justice of the Peace Court in Delaware, or the equivalent court in your home jurisdiction (each a "Small Claims Court"), provided that the action remains in that court, is made on behalf of you and/or your authorized user only and is not made part of a class action, private attorney general action or other representative or collective action. Further, you and we agree not to seek to enforce this arbitration provision, or otherwise commence arbitration based on the same claims in any action brought before the Small Claims Court.

## Termination.

We may terminate your privileges under this Agreement or limit your right to make Purchases, initiate Balance Transfers, use Convenience Checks or obtain Cash Advances at any time for any reason without prior notice. If we ask, you must return your Cards and any unused Convenience Checks to us, cut in half. You agree that you will not try to make a Purchase, use a Convenience Check, initiate a Balance Transfer or obtain a Cash Advance after you have been notified that your privilege to use your Account has been terminated. You may terminate this Agreement at any time. If you do, you must return to us all Cards and Convenience Checks previously issued on the Account. If you call us, we may require that you confirm your termination in writing. Termination will not affect existing obligations under this Agreement or your liability for all charges posted to your Account prior to the time all Cards and unused Convenience Checks issued on your Account are returned to us.

## Consent to Receive Electronic Notices.

By accepting this Agreement, you affirmatively consent to receive all periodic billing statements and all other notices electronically when legally allowed, if you provide us an e-mail address and other legally required consent, and otherwise by paper at the address shown in your files. If this is a joint Account, we can send statements and notices to either of you. You promise to inform us promptly in writing of any change in your e-mail address or your U.S. mail address. You may update this information by visiting www.Juniper.com and sending us an e-mail or telephoning us at the telephone number provided below (under "Inquiries or Questions"). We may in our discretion accept address corrections from the United States Postal Service. If at any time you need a paper copy of statements or notices, or you change your mind and prefer to receive all your statements and notices in paper rather than electronic form, telephone us at the number provided below or visit us at www.Juniper.com and send us an e-mail. In order to access your statements and notices electronically, you must have a computer equipped with at least a 40-bit JavaScript-enabled Netscape or Microsoft browser at the Version level 4.0 or higher. In order to retain your statements and notices, you must have a printer attached to your computer that can print them out or a drive or other storage device onto which you can download them. By accepting this Agreement, you confirm that you have the software and equipment that satisfies these requirements to enable you to access and retain your statements and notices electronically.

## Foreign Currency Transactions.

We and MasterCard (or their affiliates) will convert transactions in foreign currencies into U.S. Dollars. MasterCard will use their currency conversion procedures that are current at the time of the transaction. Currently, the currency conversion rate they use is either the wholesale market rate or the government-mandated rate in effect under those procedures increased by one percent. The currency conversion rate used on the conversion date may differ from the rate in effect on the date you used your Card or Account.

## Foreign Country Transaction Fee.

If you use your Card or Account to do a transaction with a business, other entity or person located outside the United States, we will charge the Foreign Country Transaction Fee disclosed in the Table of Finance and Other Charges for each such transaction, excluding Cash Advances. The Foreign Country Transaction Fee is in addition to the MasterCard or Visa Foreign Currency Conversion charge discussed above.

## Skip/Promotional Features.

From time to time, we may let you skip or reduce one or more monthly payments during a year (finance charges will continue to accrue) and/or we may temporarily reduce or eliminate certain finance charges on all or a portion of your Account balance or offer you other special terms. If we do, we will advise you of the scope and duration of the applicable skip or promotional feature. When the skip or promotional feature ends, your regular rates and terms will resume.

## Changes in This Agreement.

We can at any time change this Agreement, including the annual percentage rate and any fees, and can add or delete provisions relating to your Account or to the nature, extent and enforcement of the rights and obligations you or we may have under this Agreement. We will notify you of any change, addition or deletion. We may increase or

decrease any or all of your APRs. As permitted by applicable law, any change, addition or deletion to this Agreement will become effective at the time stated in our notice and, unless we state otherwise, the change, addition or deletion will apply to all outstanding balances in your Account as well as to new transactions. The notice we send you may state that you may notify us in writing within a specified time period that you do not wish to accept the changes, additions and deletions we are making. You will be deemed to accept all the changes, additions and deletions accompanying the notice and to ratify and confirm all the provisions of your Agreement and your acceptance of all the changes, additions and deletions described in other notices previously sent to you if 1) you do not notify us that you do not agree to the change, addition or deletion in the time frame set forth in the notice, or 2) you use the Card or Account after the conclusion of the specified time period.

## Credit Information.

You agree that we may request consumer credit reports from one or more credit reporting agencies in connection with your application and the administration of your Account. You also authorize us to exchange credit information concerning you or your Account with (and answer questions and requests from) others, such as merchants, other lenders and credit reporting agencies.

## Phone Calls/Electronic Communications.

In the regular course of our business, for quality control purposes, we may monitor and record phone conversations made or received by our employees. Similarly, we may monitor and record e-mail or conversations on our website between you and our employees. You agree that we will have such right with respect to all phone conversations, e-mail or conversations between you and our employees, whether initiated by you or any of our employees.

## Refusal to Honor Card.

We are not responsible for refusals to honor your Card or Convenience Checks. And, except as otherwise required by applicable law or regulation, we will not be responsible for merchandise or services purchased or leased through use of your Account.

## Irregular Payments and Delay in Enforcement.

We can accept late payments, partial payments, checks and money orders marked "Paid in Full" or language having the same effect without losing any of our rights under this Agreement. We can also delay enforcing our rights under this Agreement any number of times without losing them. The fact that we may at any time honor a Purchase, Balance Transfer, Convenience Check or Cash Advance in excess of your maximum credit line does not obligate us to do so again.

## Liability for Unauthorized Use of Your Account.

If your Card or Convenience Checks are lost or stolen or if you have reason to think someone may use your Account without your permission, you must notify us at once. Please either visit www.Juniper.com and send us an e-mail or telephone us at 1-888-232-0780 concerning the loss or theft of your Card or Convenience Checks or the possible unauthorized use of your Account. Do not use the Card, Account number or any Convenience Checks after they have been reported lost or stolen, even if they are found or returned. You will not be liable for unauthorized use of the Account; however, you must identify for us the charges that were not made by you or someone authorized by you and through which you received no benefit. We may require you to provide us with certain information and to comply with our investigation procedures. We may terminate or limit access to your Account if you have notified us or we have determined that your Card or Convenience Checks may have been lost or stolen, or that there may be unauthorized access to your Account.

## Assignment.

We may at any time assign your Account, any sums due on your Account, this Agreement or our rights or obligations under this Agreement. The person(s) to whom we make any such assignment shall be entitled to all of our rights under this Agreement, to the extent assigned.

## GOVERNING LAW.

THIS AGREEMENT AND YOUR ACCOUNT WILL BE GOVERNED BY THE LAWS OF THE STATE OF DELAWARE AND, AS APPLICABLE, FEDERAL LAW.

## Inquiries or Questions.

You may address any inquiries or questions which you have about your Account to Juniper Bank, by visiting www.Juniper.com and sending us an e-mail, writing us at Juniper Bank, P.O. Box 8801, Wilmington, DE 19899-8801, or calling us at 1-888-232-0780. If you telephone us instead of writing, you may lose certain rights the law gives you to dispute billing errors (see "Your Billing Rights").

000011

## YOUR BILLING RIGHTS

### Keep This Notice for Future Use.

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

### Notify Us in Case of Errors or Questions About Your Bill.

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at Card Services, P.O. Box 8802, Wilmington, DE 19899-8802. Do not write on your bill; use a separate sheet of paper. Alternatively, you may visit www.Juniper.com and send us an e-mail. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter or e-mail, give us the following information:

· Your name and Account number.

· The dollar amount of the suspected error.

· Describe the error and explain, if you can, why you believe there is an error.

If you need more information about a transaction, describe the item you are not sure about.

### Your Rights and Our Responsibilities After We Receive Your Written Notice.

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill, and we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct. If you have a problem with the quality of property or services that you purchased with a credit card (this does not apply to Convenience Check transactions), and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address, and (b) the purchase price must have been more than $50. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or service.

### FRONTIER AIRLINES EARLYRETURNS MILEAGE CREDITS

a.  When you applied for your Account, we asked whether the Primary Cardmember was a member of the Frontier EarlyReturns Program (the "Program"). If you answered yes and gave us the Primary Cardmember's membership number, we will not issue a different membership number to you. If you answered no or did not give us the membership number, we will issue the Primary Cardmember a membership number and ask Frontier Airlines to enroll the Primary Cardmember in the Program. Only one Program membership will be established regardless of whether your Account is an individual account or an account with an authorized user. If the Account has an authorized user, we will enroll the Primary Cardmember. The Primary Cardmember can be eligible to receive and redeem "mileage credit" subject to the terms and conditions of the Frontier Early Returns Rules & Procedures, as established, modified, supplemented and/or amended by Frontier from time to time (the "Program Rules").

b.  On the closing date of each billing cycle that your Account remains open and current, we will report to Frontier the Net Purchases charged to your Account during a billing cycle and request that Frontier award mileage credit as set forth in paragraph (e). If your Account is not open and/or current on the date a billing cycle closes, we will report no Net Purchases to Frontier for that billing cycle. We will ask that mileage credit be awarded to the Primary Cardmember, regardless of who made the "Purchase." Net Purchases for a billing cycle are determined by totaling all new Purchases added to the Account during the billing cycle, then subtracting credits posted to the Account during the period for returned Purchases and/or adjustments. For purposes of reporting Net Purchases, we may round up or down to whole dollar amounts. If credits for returned Purchases exceed new Purchases

000012

Primary Cardmember's accrued mileage credit accordingly. Net Purchases does not include fees, charges, credit insurance premiums, or transactions posting as Cash Advances or non-qualifying Balance Transfers, whether received from financial institutions, automated teller machines, by use of JUNIPER BANK checks, or by any other means. We reserve the right to exclude from Net Purchases unauthorized Purchases, Purchases which are added to your Account after you are past due or overlimit. We may ask Frontier to withdraw mileage credit previously awarded if your Account is more than sixty (60) days past due, or if the mileage credit was awarded on Purchases not authorized by you. We are not responsible to award mileage credit under the Program, to arrange or provide for any services related to travel or the use of mileage credit, for any delay, failure, or refusal by Frontier to award or redeem mileage credit, or for any decision by Frontier to revoke or cancel mileage or membership in the Program.

c. Frontier Airlines is not a party to the agreement between you and us, does not participate in any extension of credit or decision to extend credit under these regulations, and has no authority regarding the Account. JUNIPER BANK is the sole creditor and owner of the Account. You authorize us to share information about your account with Frontier to the extent needed to administer the program. You agree that we may share Account information as set forth in Juniper Bank's Privacy Policy.

d. We will show on your monthly Account statement the Primary Cardmember's accrued mileage credits as reflected in our records. You understand that there will be a delay between the date you make a Purchase, the date we report Net Purchases to Frontier, and the date that Frontier acts upon the information, and that, for this and other reasons, our records and the records of Frontier regarding the Primary Cardmember's accrued mileage may differ. You understand and agree that mileage credit is not received by the Primary Cardmember until awarded by Frontier, and that, in the event of any discrepancy between our records and Frontier's records of the Primary Cardmember's accrued mileage credits, the records of Frontier will control.

e. Juniper Bank will request that Frontier Airlines award to the Primary Applicant mileage credits equal to one EarlyReturns Program mile for each dollar of net purchases charged to the account during any statement period and two miles will be awarded for every one dollar of net purchases of Frontier Airlines tickets on a cardmember's Frontier MasterCard. One mile will be awarded for every dollar in balances transferred to a cardmember's Frontier MasterCard during the first 30 days the account is open up to a maximum of 10,000 miles. All awards are subject to the account being open and current on the statement closing date. The 12,500 bonus miles will be awarded at the close of a cardmembers first billing statement when a first purchase or balance transfer is made.

From time to time, we may offer bonuses or awards of mileage credit or other premiums (for example, First Use Miles, First Use Certificates, and Promotional Companion Tickets) to new Frontier MasterCard Cardmembers. Unless otherwise stated in the offer, these bonuses and /or awards are intended for persons who are not, and have not previously been, Frontier MasterCard Cardmembers. You understand and agree that, unless we otherwise state, you are no longer eligible to receive these bonuses and/or awards for any new Frontier MasterCard account you open after this Account is opened. If you receive a bonus or award for which you are not eligible, we may direct Frontier to revoke the bonus or award, or reduce your mileage credit by the amount of the award, or charge your account for the fair value of the bonus or award, at our option.

## TABLE OF FINANCE AND OTHER CHARGES

Please see the enclosed insert for information regarding your introductory **Annual Percentage Rate (APR)** on Balance Transfers and Convenience Checks during the Introductory Period.

| | |
|---|---|
| Variable **APR** on Purchases and all new and outstanding Balance Transfers and Convenience Checks after the Introductory Period (see below) is | 16.24% as of 7/7/06 |
| Variable **APR** on Cash Advances (see below) is | 20.24% as of 7/7/06 |
| Variable **APR** for Default APR (see below) is | up to 30.24% as of 7/7/06 |

### Variable Rate Information:

The Daily Periodic Rates ("DPR") used to determine your Periodic Rate finance charge for Purchases, Balance Transfers and Convenience Checks after the Introductory Period, Cash Advances, and the Default APR are variable rates. The DPRs will equal 1/365th of the sum of 1) the highest listed U.S. Prime Rate (the "Prime Rate") in the Money Rates section of The Wall Street Journal on either the first or last day of the billing cycle (or the next business day if the first day is not a business day) (the "Determination Date"), plus 2) 7.99% for Purchases, Balance Transfers, and Convenience Checks, 11.99% for Cash Advances, and up to 21.99% for the Default APR. If The Wall Street Journal does not publish the U. S. Prime Rate, or if it changes the definition of the U.S. Prime Rate, we may, in our sole discretion, substitute another index.

The APR corresponds to the DPR and is calculated by multiplying the DPR by 365.

The DPR and the corresponding APR may increase or decrease monthly if there is an increase or decrease in the Prime Rate. There is no limitation on the amount of any increase.

### The minimum rates on your Account:

The APR for Purchases, Balance Transfers and Convenience Checks will never be less than 15.99%, corresponding to a DPR of 0.0438%. The APR for Cash Advances will never be less than 19.99%, corresponding to a Daily Periodic Rate of 0.0548%.

### How the Default APR may apply to your Account (including any introductory or promotional rate balances):

We have established the Periodic Rates on your Account based on your particular credit performance history either at the time of the offer or when we established your Account. We will periodically review your credit performance including, but not limited to, your payment history on accounts you may have with other creditors, your usage of the Card and your payment history on the Card, including but not limited to, timeliness of payment, if you exceed your credit line or if you make a payment that is not honored by your bank. If you do not maintain your past level of credit performance, we may, without giving you additional notice, increase the Periodic Rates (and corresponding APRs) for all new and outstanding balances (including any introductory or promotional rate balances) on your Account up to the Default APR. The Default APR will be determined at the time of Default based on your Juniper Account history and your performance on non-Juniper Accounts. The Default APR will be applied to your Account (for all new and outstanding balances) as of the first day of the next billing cycle.

### Annual Percentage Rates on your Account as of 7/7/06:

As of 7/7/06 the Prime Rate was 8.25%. The DPRs for Purchases and all new and outstanding Balance Transfers and Convenience Checks after the Introductory Period would have been 0.0445%, Cash Advances would have been 0.0555% and for Default APR would have been 0.0828%. The corresponding ANNUAL PERCENTAGE RATES would have been 16.24%, 20.24% and 30.24% respectively.

All of the above rates may vary. Any such increase or decrease will cause a corresponding increase or decrease in the amounts of finance charges assessed and possibly in the Minimum Payment Due.

000014

| | |
|---|---|
| **Cash Advance & Transaction FINANCE CHARGE** (Transaction Finance Charges includes the purchase of money orders, traveler's checks, foreign currency, lottery tickets, gambling chips, or wire transfers) | 3% of each transaction amount (min. $10) (together with any surcharge imposed by ATM owner) |
| **Balance Transfer and Convenience Check FINANCE CHARGE** | |
| Made during Introductory Period | 3% of each transaction amount (min. $5; max. $50) |
| Made after Introductory Period | 3% of each transaction amount (min. $5) |
| **Foreign Country Transactions Charge** | 2% of the U.S. Dollar transaction amount |
| **Minimum Periodic Rate FINANCE CHARGE** (in any billing cycle a periodic rate finance charge is due) | $1 |
| **Annual Membership Charge** | $49 |
| **OTHER INTEREST CHARGES:** | |
| **Returned Payment Charge** | $29 |
| **Returned Convenience Check Charge** | $29 |
| **Over Your Credit Line Charge** | $0 |
| **Late Charge** | For Balances <$100: $25 For Balances $100 - $999.99: $29 For Balances ≥$1,000: $39 |
| **ADMINISTRATIVE CHARGES:** | |
| **Duplicate Copy of Billing Statement Fee** | $3 |
| **Stop Convenience Check Payment Fee** | $29 |

# EXHIBIT  3

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:
Harvey M. Moore, Esq.101128, Amy Lief, Esq. 263419, Eleecia Barksdale, Esq. 297501
THE MOORE LAW GROUP, A PROFESSIONAL CORPORATION
3710 S. SUSAN STREET, SUITE 100 PO BOX 25145 SANTA ANA, CA 92704

TELEPHONE NO.: **(800) 506-2652**        FAX NO. *(Optional)*:   **(714) 754-9568**
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*: PLAINTIFF: BARCLAYS BANK DELAWARE

FOR COURT USE ONLY

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**04/22/2015** at 02:19:00 PM

Clerk of the Superior Court
By E- Filing,Deputy Clerk

**SAN DIEGO COUNTY SUPERIOR COURT - NORTH**

STREET ADDRESS: 325 S. MELROSE DR.

MAILING ADDRESS:

CITY AND ZIP CODE: VISTA, CA 92081

BRANCH NAME: NORTH COUNTY DIVISION

PLAINTIFF/PETITIONER:  BARCLAYS BANK DELAWARE

DEFENDANT/RESPONDENT:  DIANA RODRIGO

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: 261000023 |
|---|---|

*(Separate proof of service is required for each party served.)*        **BY FAX**

CASE NUMBER:
37-2015-00011631-CL-CL-NC

. At the time of service I was at least 18 years of age and not a party to this action.

. I served copies of:

- a. ☒ summons
- b. ☒ complaint
- c. ☐ Alternative Dispute Resolution (ADR) package
- d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
- e. ☐ cross-complaint
- f. ☒ other *(specify documents)*: CIVIL CASE COVER SHEET; DECLARATION PURSUANT TO CCP 395 (b): VENUE OF PERSONAL, FAMILY OR HOUSEHOLD OBLIGATIONS; NOTICE OF CASE ASSIGNMENT; NOTICE OF ELIGIBILITY TO EFILE AND ASSIGNMENT TO IMAGING DEPARTMENT;

. a. Party served *(specify name of party as shown on documents served)*:
DIANA RODRIGO, AN INDIVIDUAL

| | | | |
|---|---|---|---|
| Age: 40'S | Weight: 135 | Hair: | Sex: female |
| Height: 5'7" | Eyes: | Race: FILIPINO | Marks: |

- b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:

. Address where the party was served: **4727 VIA COLORADO**
**OCEANSIDE, CA 92056**

. I served the party *(check proper box)*

- a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: 04/15/2015   (2) at *(time)*: 07:58 am
- b. ☐ **by substituted service.** On *(date)*: at *(time)*: I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3b)*:

  - *(1)* ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

  - *(2)* ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

  - *(3)* ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

  - *(4)* ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., §415.20). I mailed the documents on *(date)*: from *(city)*:                    or ☐ a declaration of mailing is attached.

  - *(5)* ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Approved for Mandatory Use
Judicial Council of California
POS-010 [Rev.January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10
POS010-1/261000023M1

PETITIONER: **BARCLAYS BANK DELAWARE**

RESPONDENT: **DIANA RODRIGO**

BY FAX

CASE NUMBER:

**37-2015-00011631-CL-CL-NC**

c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

　(1) on *(date):*　　　　　　　　　　　　　(2) from *(city):*

　(3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.) (Code Civ. Proc., § 415.30.)

　(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

　☐ Additional page describing service is attached.

The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☒ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☐ On behalf of *(specify):*

　under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

**Person who served papers**

a. Name: **MANUEL ROBLES - Advanced Attorney Services, Inc.**

b. Address: **3500 Fifth Ave., Suite 202 San Diego, CA 92103**

c. Telephone number: **(619) 299-2012**

d. The fee for service was: $ **55.00**

e. I am:

　(1) ☐ not a registered California process server.

　(2) ☐ exempt from registration under Business and Professions Code section 22350(b).

　(3) ☒ registered California process server:

　　(i) ☐ owner　☐ employee　　☒ independent contractor.

　　(ii) Registration No.: **2346**

　　(iii) County: **SAN DIEGO**

☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

　　or

☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: **04/20/2015**

**Advanced Attorney Services, Inc.**
**3500 Fifth Ave., Suite 202**
**San Diego, CA 92103**
**(619) 299-2012**
**San Diego County: 1584**

　　　　**MANUEL ROBLES**　　　　　　▶
　　(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

# EXHIBIT  4

1  Daniel Lickel, SBN 224510
2  1102 Cesar Chavez Parkway
   San Diego, CA, 92113
3  Phone: (858) 952-1033

4  Attorney for Defendant Diana Rodrigo

5            SUPERIOR COURT OF CALIFORNIA-COUNTY OF SAN DIEGO

6                          NORTH COUNTY DIVISION
7

| | |
|---|---|
| 8  Barclays Bank Delaware, | CASE NO. 37-2015-00011631-CL-CL-NC |
| 9            Plaintiff(s), | **DECLARATION OF DEFENDANT** |
| 10  vs. | DIANA RODRIGO **IN SUPPORT OF** |
| | **HER MOTION TO VACATE DEFAULT** |
| 11  Diana Rodrigo,  and DOES 1 to 10, inclusive, | **[FAX FILE]** |
|            Defendant(s). | |
| 12 | Department:          N-28 |
| 13 | Complaint Filed:    4/08/2015 |
| | Hearing Date:       8/21/2015 |
| 14 | Hearing Time:       1:30 p.m. |

15              **DECLARATION OF DIANA RODRIGO**

16       I, Diana Rodrigo,  hereby declare as follows:

17       1.      I know personally of the matters below, and if called to testify under oath in this

18  matter could and would competently testify as follows.

19       2.      I am the Defendant in the above-captioned matter.  I never received personal

20  service of the summons and complaint in this action at any time.

21       3.      I live at 817 America Way, Del Mar, California, 92014.  On April 15, 2015, I woke

22  up there and went about my business for the day.  I was not at 4727 Via Colorado in Oceanside at

23  7:58 a.m. that day.  I was probably taking a walk at the beach in Del Mar at that time.

24       4.      I have reviewed my calendar for the 15th of April, which reminded me that I had to

25  meet a client at my hair salon at 9:00 a.m. that day.  I remember taking a walk on the beach before

26  work that day and then getting to the salon where I worked, also in Solana Beach, at about 8:30

27  a.m.

28

5.     I have lived at 817 America Way, Del Mar, California, 92014, since September 2013. I have attached additional documents to show that I have been receiving various bills at this address since before April 2015.

6.     Attached as **Exhibit 8** are true and correct copies of invoices I received from Dish at 817 America Way in Del Mar. The invoices are dated October 9, 2013, March 9, 2015, and April 9, 2015.

7.     Attached as **Exhibit 4** is a true and correct copy of an invoice I received at my Del Mar home for medical services. Personal information has been redacted. The invoice is dated in April of 2015, the time of the alleged personal service.

8.     I have not used 4727 Via Colorado, Oceanside, CA, 92056, as an address for any purpose since September 21, 2012. I lived there from February 1, 2011, to September 21, 2012.

9.     That Oceanside address is not my place of work or my home and I do not receive mail at that address. As of June 22, 2015, I did not know the identity of any of the people who live there. In 2012, the owner of the property was unrelated to me and I did not leave any relatives behind at that property. As of June 22, 2015, I did not know whether the property was still owned by the same person.

10.     After I moved out of the Oceanside property, I set up mail forwarding. The last time I spoke with anyone at or related to that home was when I called the owner of property on Via Colorado Oceanside in November of 2012 a month and a half after I had moved to find out if my mail forwarding had missed any mail for me. I have not spoken with anyone who lives at or owns that property since then. I have attempted contact by text message to the person who owned the property when I lived there but have not received any response.

11.     In September 2012, I moved to an apartment at 2575 Fenton Parkway, San Diego, CA 92108. A true and correct copy of the account for my tenancy there is attached as **Exhibit 2**.

12.     This was provided to me by staff of the property manager, which is called Portofino Apartments, on about June 13, 2015. I lived there until September 28, 2013, when I moved to Del Mar to live with Lisa Dandurand. She and I have lived together since then. My current zip code in Del Mar is 92014.

13.     Attached as **Exhibit 5** is the deposit accounting I received after I left the Portofino apartment.  This is a true and correct copy of the original that I have in my files.

14.     Attached as **Exhibit 6** is a Gas and Electric Bill that I received for the Portofino apartment in October 2013.  This was my final bill and was forwarded to me after I moved out.

15.     Attached as **Exhibit 7** is the final water bill that I received for the Portofino apartment in October 2013.  This was forwarded to my new address in Del Mar after I moved out.

16.     Attached as **Exhibit 3** is a color copy of my current driver's license.  The driver's license number has been redacted.   The license was set to expire in July this year and was recently renewed.

17.     I first learned that this action was pending when I received an advertisement in the mail from a lawyer stating that a lawsuit had been filed against someone named Diana Rodrigo, not Daniel Lickel.  I understood that since an action had been filed that the next step was service of the summons, so I waited.

18.     However, on about May 18, 2015, I learned for the first time that Barclays' bank claimed personal service of the summons and complaint from a notation on the Court's registry of actions, which could be accessed at the Court's website.  I learned of this information with the assistance of Attorney Daniel Lickel.

19.     After I learned of this information, I went that same day to the court to retrieve a copy of the court's records in this case on May 18, 2015.   This included a copy of the complaint which I saw for the first time that day.  A true and correct copy of the proof of service that I retrieved from the Court is attached as **Exhibit 1**.

20.     The proof of service claims that the person served was Filipino.  My heritage is mixed, but I am not Filipino.  I am predominantly Hispanic.  I am Spanish French and Greek from my mother's side and Spanish/ Mexican on my father's side.

21.     The proof of service also claims that the person served was 135 pounds and 5 feet 7 inches tall.  Neither of these match me.  I am not 135 pounds and my height is 5 feet 3 inches. This information is confirmed by my current driver's license.

22.     The opposition that Plaintiff filed to the first motion, included a couple of letters that Plaintiff's counsel claims were sent in December 2014 and March 2015.  I never received those letters.

23.     I did put a mail forwarding in place when I left the Oceanside property in 2012, but those mail forwarding orders expired in 2013 and I did not renew them after that.

24.     I do not have a lease agreement for my current residence because I rent a room from the owner, Lisa Dandurand.  She and I have never seen fit to have a formal lease agreement.

25.     Plaintiff claims that I received the complaint personally.  Had I received the complaint personally, I would have done something about it right away.  The truth is I did not receive anything personally and did not actually view the complaint for the first time until May 18 of this year.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Dated this 23 day of July, 2015 in Del Mar, California.

_____
Diana Rodrigo, Defendant

# EXHIBIT   5

CIV-100

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>— Harvey Moore, Esq. (101128) Eleecia Barksdale, Esq.(297501) Erin McKinley, Esq. (292865)<br>The Moore Law Group, a Professional Corporation<br>3710 S. Susan St., Ste. 210<br>P.O. Box 25145, Santa Ana, CA 92799-5145<br><br>TELEPHONE NO.:  800-506-2652          FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*:   Plaintiff | **FOR COURT USE ONLY**<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**05/29/2015** at 11:38:00 AM<br><br>Clerk of the Superior Court<br>By Esperanza Fernandez,Deputy Clerk |
|---|---|

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF      San Diego |
|---|
| STREET ADDRESS:               325 S. Melrose Drive |
| MAILING ADDRESS: |
| CITY AND ZIP CODE:      Vista CA 92081 |
| BRANCH NAME: |

| PLAINTIFF/PETITIONER:      Barclays Bank Delaware |
|---|
| DEFENDANT/RESPONDENT:      Diana Rodrigo, an individual; et al. |

| **REQUEST FOR**<br>(Application) | [X] **Entry of Default**      [ ] **Clerk's Judgment**<br>[ ] **Court Judgment** | CASE NUMBER:<br>37-2015-00011631-CL-CL-NC |
|---|---|---|

1. **TO THE CLERK:** On the complaint or cross-complaint filed
   a. on *(date):*      04/08/2015
   b. by *(name):*      Barclays Bank Delaware
   c. [X] Enter default of defendant *(names):*      Diana Rodrigo, an individual

   d. [ ] I request a court judgment under Code of Civil Procedure sections 585(b), 585(c), 989, etc., against defendant *(names):*

   *(Testimony required. Apply to the clerk for a hearing date, unless the court will enter a judgment on an affidavit under Code Civ. Proc., § 585(d).)*
   e. [ ] Enter clerk's judgment
      (1) [ ] for restitution of the premises only and issue a writ of execution on the judgment. Code of Civil Procedure section 1174(c) does not apply. (Code Civ. Proc., § 1169.)
         [ ] Include in the judgment all tenants, subtenants, named claimants, and other occupants of the premises. The *Prejudgment Claim of Right to Possession* was served in compliance with Code of Civil Procedure section 415.46.
      (2) [ ] under Code of Civil Procedure section 585(a). *(Complete the declaration under Code Civ. Proc., § 585.5 on the reverse (item 5).)*
      (3) [ ] for default previously entered on *(date):*

2. **Judgment to be entered.**

| | | Amount | | Credits acknowledged | | | Balance |
|---|---|---|---|---|---|---|---|
| a. | Demand of complaint . . . . . . . . . . . . | $ 0.00 | $ | 0.00 | $ | 0.00 |
| b. | Statement of damages * | 0.00 | | 0.00 | | 0.00 |
| | (1) Special . . . . . . . . . . . . . . . . . . | $ 0.00 | $ | 0.00 | $ | 0.00 |
| | (2) General . . . . . . . . . . . . . . . . . . | $ 0.00 | $ | 0.00 | $ | 0.00 |
| c. | Interest . . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ | 0.00 | $ | 0.00 |
| d. | Costs *(see reverse)* . . . . . . . . . . . . | $ 0.00 | $ | 0.00 | $ | 0.00 |
| e. | Attorney fees . . . . . . . . . . . . . . . . . . | $ 0.00 | $ | 0.00 | $ | 0.00 |
| f. | **TOTALS** . . . . . . . . . . . . . . . . . . . . | $ 0.00 | $ | 0.00 | $ | 0.00 |

   g. Daily damages were demanded in complaint at the rate of: $          per day beginning *(date):*
   (* *Personal injury or wrongful death actions; Code Civ. Proc., § 425.11.)*

3. [ ] *(Check if filed in an unlawful detainer case)* Legal document assistant or unlawful detainer assistant information is on the reverse *(complete item 4).*

Date:    May 27, 2015

Eleecia Barksdale, Esq.,Erin McKinley, Esq.          ▶
_____          _____
(TYPE OR PRINT NAME)                               (SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

| **FOR COURT<br>USE ONLY** | (1) [✓] Default entered as requested on *(date):*          05/29/2015<br>(2) [ ] Default NOT entered as requested *(state reason).* |
|---|---|
| | Clerk, by_____ E. Fernandez _____, Deputy |

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-100 [Rev. January 1, 2007] | **REQUEST FOR ENTRY OF DEFAULT**<br>(Application to Enter Default) | Code of Civil Procedure,<br>§§ 585-587, 1169<br>www.courtinfo.ca.gov |
|---|---|---|

American LegalNet, Inc.
www.FormsWorkflow.com

CIV-100

| PLAINTIFF/PETITIONER: | Barclays Bank Delaware | CASE NUMBER: |
| DEFENDANT/RESPONDENT: | Diana Rodrigo, an individual | 37-2015-00011631-CL-CL-NC |

4. **Legal document assistant or unlawful detainer assistant** (Bus. & Prof. Code, § 6400 et seq.). A legal document assistant or unlawful detainer assistant ☐ did ☒ did **not** for compensation give advice or assistance with this form. *(If declarant has received any help or advice for pay from a legal document assistant or unlawful detainer assistant, state):*

   a. Assistant's name:
   b. Street address, city, and zip code:

   c. Telephone no.:
   d. County of registration:
   e. Registration no.:
   f. Expires on *(date)*:

5. ☒ **Declaration under Code of Civil Procedure Section 585.5** *(required for entry of default under Code Civ. Proc., § 585(a)).* This action

   a. ☐ is ☒ is not on a contract or installment sale for goods or services subject to Civ. Code, § 1801 et seq. (Unruh Act).
   b. ☐ is ☒ is not on a conditional sales contract subject to Civ. Code, § 2981 et seq. (Rees-Levering Motor Vehicle Sales and Finance Act).
   c. ☒ is ☐ is not on an obligation for goods, services, loans, or extensions of credit subject to Code Civ. Proc., § 395(b).

6. **Declaration of mailing** (Code Civ. Proc., § 587). A copy of this *Request for Entry of Default* was

   a. ☐ **not mailed** to the following defendants, whose addresses are **unknown** to plaintiff or plaintiff's attorney *(names):*

   b. ☒ **mailed** first-class, postage prepaid, in a sealed envelope addressed to each defendant's attorney of record or, if none, to each defendant's last known address as follows:

      (1) Mailed on *(date):* MAY 2 8 2015      (2) To *(specify names and addresses shown on the envelopes):*
      Diana Rodrigo, an individual;
      4727 Via Colorado
      Oceanside CA 92056-6523

I declare under penalty of perjury under the laws of the State of California that the foregoing items 4, 5, and 6 are true and correct.

Date: MAY 2 8 2015

Ricardo Barriga

| (TYPE OR PRINT NAME) | ▶ | (SIGNATURE OF DECLARANT) |

7. **Memorandum of costs** (required *if money judgment requested*). Costs and disbursements are as follows (Code Civ. Proc., § 1033.5):

   a. Clerk's filing fees ................... $
   b. Process server's fees ................ $
   c. Other *(specify):* ..................... $
   d. ................................... $
   e. **TOTAL** ........................... $

   f. ☐ Costs and disbursements are waived.

   g. I am the attorney, agent, or party who claims these costs. To the best of my knowledge and belief this memorandum of costs is correct and these costs were necessarily incurred in this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

| (TYPE OR PRINT NAME) | ▶ | (SIGNATURE OF DECLARANT) |

8. ☒ **Declaration of nonmilitary status** *(required for a judgment).* No defendant named in item 1c of the application is in the military service so as to be entitled to the benefits of the Servicemembers Civil Relief Act (50 U.S.C. App. § 501 et seq.).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: May 27, 2015

Eleecia Barksdale, Esq./Erin McKinley, Esq.

| (TYPE OR PRINT NAME) | ▶ | (SIGNATURE OF DECLARANT) |

# EXHIBIT  6

1102 Cesar Chavez Pkwy • San Diego, CA 92113 • Phone: (858) 952-1033 • Fax: (619) 546-0792

July 10, 2015

Eleecia Barksdale, Esq.
The Moore Law Group
3710 S. Susan St., Ste. 210
Santa Ana, CA 92704

*Via facsimile to 714-754-9568*

**Re: Matter Name: Barclay's Bank v. Diana Rodrigo**
**Our Client(s): Diana Rodrigo**
**Case Number: 37-2015-00011631-CL-CL-NC**

Dear Ms. Eleecia:

As you know, I represent Diana Rodrigo, who is Defendant in the above described case (hereinafter "Defendant"). We spoke by phone on July 8, 2015 at about 2:32 p.m. In the call I requested based on the facts and evidence presented in Ms. Rodrigo's motion to vacate the default judgment that you agree to stipulate to vacate the judgment. You denied that request after reviewing the file.

During the call you also said that you had served Ms. Rodrigo at the Oceanside address because that was the last address on the account. Your opposition insists that Ms. Rodrigo was in fact served personally at that address even though she has not live their for years and she submitted her own declaration and that of her current roommate stating that she had not lived at that address for years.

I also told you that as a result of an error that I cannot explain, the Court did not receive the first appearance fee for Defendant. As a result, I have scheduled a new hearing for which I will serve the motion papers next week. As I promised, attached is a copy of Ms. Rodrigo's current driver's license. This along with a large pile of other documents that will confirm Ms. Rodrigo's address will also be provided if a motion is required. I also intend to go to the Oceanside address and figure out who in fact your process server served, because it was not my client.

I renew my request that you stipulate to vacate the default entered in this case as your process server has filed a false proof of service.

Sincerely yours,

Daniel Lickel

Enclosure (Redacted Copy of Driver's License)

# LAW OFFICES OF DANIEL LICKEL
### ATTORNEYS AT LAW

1102 Cesar Chavez Pkwy • San Diego, CA 92113 • Phone: (858) 952-1033 • Fax: (619) 546-0792

# facsimile transmittal

**To:** Eleecia Barksdale, Esq.
The Moore Law Group
3710 S. Susan St., Ste. 210
Santa Ana, CA 92704

*714-754-9568*

| | | | |
|---|---|---|---|
| **From:** | Dan Lickel | **Date:** | 7/10/2015 |
| **Re:** | **Re:   Matter Name: Barclay's Bank v. Diana Rodrigo**<br><br>**Our Client(s):  Diana Rodrigo**<br><br>**Case Number:  37-2015-00011631-CL-CL-NC** | **Pages:** | 3, including cover sheet |

**CC:**

☐ Urgent   ☑ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

Please see the attached letter.

```
                    TRANSMISSION VERIFICATION REPORT

                                           TIME  : 07/10/2015 05:56PM
                                           NAME  : LAW_OFFICE
                                           FAX   : 6195460792
                                           TEL   :
                                           SER.# : U63400M3N630755


    DATE,TIME                  07/10  05:56PM
    FAX NO./NAME               17147549568
    DURATION                   00:00:30
    PAGE(S)                    03
    RESULT                     OK
    MODE                       STANDARD
                               ECM
```

# LAW OFFICES OF DANIEL LICKEL
## ATTORNEYS AT LAW

1102 Cesar Chavez Pkwy • San Diego, CA 92113 • Phone: (858) 952-1033 • Fax: (619) 546-0792

# facsimile transmittal

| | | | |
|---|---|---|---|
| **To:** | Eleecia Barksdale, Esq.<br>The Moore Law Group<br>3710 S. Susan St., Ste. 210<br>Santa Ana, CA 92704 | | *714-754-9568* |
| **From:** | Dan Lickel | **Date:** | 7/10/2015 |
| **Re:** | **Re:  Matter Name:**<br>**Barclay's Bank v. Diana**<br>**Rodrigo**<br><br>**Our Client(s):  Diana**<br>**Rodrigo**<br><br>**Case Number:  37-2015-**<br>**00011631-CL-CL-NC** | **Pages:** | 3, including cover sheet |
| **CC:** | | | |

☐ Urgent    ☑ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

# EXHIBIT 7

# SUPERIOR COURT OF CALIFORNIA,
## COUNTY OF SAN DIEGO
### NORTH COUNTY

### MINUTE ORDER

DATE: 08/21/2015           TIME: 01:35:00 PM     DEPT: N-28

JUDICIAL OFFICER PRESIDING: Earl H. Maas, III
CLERK: Noreen McKinley
REPORTER/ERM: Not Reported
BAILIFF/COURT ATTENDANT: Chris Lauraitis

CASE NO: **37-2015-00011631-CL-CL-NC**   CASE INIT.DATE: 04/08/2015
CASE TITLE: **Barclays Bank Delaware vs. Rodrigo [IMAGED]**
CASE CATEGORY: Civil - Limited     CASE TYPE: Rule 3.740 Collections

**EVENT TYPE**: Motion Hearing (Civil)

**APPEARANCES**
Daniel J Lickel, counsel, present for Defendant(s).

Attorney Lickel submit(s) on the Court's tentative ruling.

The Court CONFIRMS the tentative ruling as follows:
Defendant Diana Rodrigo's motion to vacate the default entered in this action on 5/29/15 is granted. The court clerk shall file the proposed answer as of the date of this ruling. The answer is deemed served on all appearing parties as of the date of this ruling. This case shall be returned to the civil active list.

IT IS SO ORDERED.

This ruling is the order of the Court, filed as of this date. No formal order is required.

_Judge Earl H. Maas, III_

# EXHIBIT 8



Harvey Moore, Esq. ●
Ray Mahdavi, Esq. ●
Angela Dawson, Esq. ●
Sheila Shahriyarpour, Esq. ●≠
Amy Lief, Esq. ●
Erin McKinley, Esq. ●
Eleecia Barksdale, Esq. ●
Brett Riley, Esq. ≠
Francella Wright, Esq. *

●licensed in California
≠licensed in Colorado
*licensed in New Mexico



**Toll Free 1-800-506-2652**
**Mailing Address:**
**PO Box 25145**
**Santa Ana, CA 92799-5145**

California Office:
3710 S. Susan St., Ste 210
Santa Ana, CA 92704
Phone 714-431-2000
Fax 714-754-9568

Colorado Office:
1901 W. Littleton Blvd., Ste 214
Littleton, CO 80120
Phone 303-586-6561
Fax 720-278-7794

New Mexico Office:
PO Box 3767
Albuquerque, NM 87190-3767
Phone 505-903-5820
Fax 505-903-5833

Sírvase encontrar la traducción de esta carta al español al reverse.

March 25, 2015

Diana Rodrigo
4727 Via Colorado
Oceanside CA 92056-6523

> Re:   Obligation owing to Berman & Rabin, P.A.
>        Account number XXXXXXXXXXXXX5101
>        Balance Owing $5,012.17

## NOTICE OF INTENTION TO SUE AND INCUR COURT COSTS

Our client has authorized us to file a lawsuit to collect the balance owing on the above referenced account. In addition to seeking a judgment for principal, we will ask the court to award allowable court costs (the actual cost of the filing fee and the actual cost of service of process).

You may be able to settle this account for less than the full balance or to arrange to make payments on the account over time. Any payments on your account should be made payable to Berman & Rabin, P.A..

You are encouraged to call us to resolve this matter. Our TOLL FREE NUMBER IS (800) 506-2652. We look forward to hearing from you.

The Moore Law Group,

Amy Lief, Esq.
Eleecia Barksdale, Esq.
Erin McKinley, Esq.

**This communication is from a debt collector in an attempt to collect a debt. Any information obtained will be used for that purpose.**
261000023

Harvey Moore, Esq. •
Ray Mahdavi, Esq. •
Angela Dawson, Esq. •
Sheila Shahriyarpour, Esq.•≠
Amy Lief, Esq. •
Erin McKinley, Esq. •
Eleecia Barksdale, Esq.•
Brett Riley, Esq. ≠
Francella Wright, Esq. *

•licensed in California
≠licensed in Colorado
*licensed in New Mexico



**The** **Moore**
**Law Group**
A Professional Corporation

Línea gratuita 1-800-506-2652
Dirección postal:
PO Box 25145
Santa Ana, CA 92799-5145

California Office:
3710 S. Susan St., Ste 210
Santa Ana, CA 92704
Phone 714-431-2000
Fax 714-754-9568

Colorado Office:
1901 W. Littleton Blvd., Ste 214
Littleton, CO 80120
Phone 303-586-6561
Fax 720-278-7794

New Mexico Office:
PO Box 3767
Albuquerque, NM 87190-3767
Phone 505-903-5820
Fax 505-903-5833

English language translation of this letter on reverse.

March 25, 2015

Diana Rodrigo
4727 Via Colorado
Oceanside CA 92056-6523

Re:   Obligación adeudada a Berman & Rabin, P.A.
Número de cuenta XXXXXXXXXXXXX5101
Saldo adeudado $5,012.17

## NOTIFICACIÓN DE INTENCIÓN DE INICIAR ACCIONES LEGALES E INCURRIR GASTOS JUDICIALES

Nuestro cliente nos ha autorizado a iniciar una demanda judicial para cobrar el saldo adeudado de la cuenta mencionada en la referencia. Aparte de buscar el pronunciamiento de una sentencia respecto del capital, le solicitaremos al juez que disponga que usted abone los gastos judiciales permitidos (el costo efectivo de la tarifa por acceso a la justicia y el costo efectivo incurrido en el diligenciamiento de la notificación de la demanda).

Usted podría saldar esta cuenta por menos del saldo total o acordar efectuar pagos correspondientes a la cuenta durante un determinado plazo. Los pagos correspondientes a su cuenta deberán ser pagaderos a Berman & Rabin, P.A.

Lo invitamos a que se comunique con nosotros a fin de resolver este asunto. Nuestro NÚMERO DE LÍNEA GRATUITO ES (800) 506-2652. Esperamos tener noticias suyas.

The Moore Law Group,

Amy Lief, Esq.
~~Eleecia Barksdale, Esq.~~
~~Erin McKinley, Esq.~~

Esta comunicación corresponde a una persona que cobra deudas en un intento por cobrar una deuda. Cualquier información obtenida será utilizada para tal fin.
261000023