1 Daniel Lickel (SBN 224510)
2 1102 Cesar Chavez Parkway
  San Diego, CA 92113
3 Phone: (858) 952-1033
4 Fax:  (619) 546-0792

5
6 Attorney for Plaintiff

7
8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA
10

11

| | |
|---|---|
| 12 Diana Rodrigo, | CASE NO. 3:16-cv-00808-JAH-JMA |
| 13 | **PLAINTIFF'S OPPOSITION TO** |
| 14              Plaintiff(s), | **(1) MOTION TO DISMISS COMPLAINT BY BARCLAYS BANK DELAWARE PURSUANT TO FRCP 12(B)(6);** |
| 15         vs. | |
| 16 | |
| 17 Barclays Bank Delaware; and The Moore Law Group, a California | **(2) MOTION TO DISMISS COMPLAINT BY THE MOORE LAW GROUP PURSUNT TO FRCP 12(B)(6)** |
| 18 Professional Corporation | |
| 19 | |
| 20              Defendant(s). | |
| 21 | DATE: 7/18/2016 |
| 22 | TIME: 2:30 P.M. |
| 23 | CTRM:  13B |
| 24 | |
| 25 | JUDGE:  THE HON. JOHN A. HOUSTON |
| 26 | |
| 27 | |

28

OPPOSITION TO DEFENDANT BARCLAYS BANK'S AND THE MOORE LAW GROUPS' MOTIONS TO DISMISS
3:16-cv-00808-JAH-JMA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>NOTICE OF OPPOSITION TO MOTIONS FILED BY DEFENDANTS BARCLAYS BANK DELAWARE AND THE MOORE LAW GROUP</u>

TO THE HONORABLE JOHN A. HOUSTAN AND DEFENDANTS BARCLAYS BANK DELAWARE AND THE MOORE LAW GROUP: PLAINTIFF Diana Rodrigo hereby presents her OPPOSITION to the motions filed by each of the defendants to dismiss the complaint filed by PLAINTIFF in this single pleading due to the fact that each MOTION TO DISMISS raises similar issues that are answered by the common allegations of the Complaint, and common argument presented herein.  The oppositions are also combined in this single pleading out of respect for the Court's local rule 7.1 (h) which limits the total pages filed by any party for motions calendared for the same date to 25 pages.

Date:  7/1/2016                              Respectfully submitted,

                                                       /s/ Daniel Lickel                                      

                                                       Attorney for Plaintiff Diana Rodrigo

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................iii

I.  INTRODUCTION ....................................................................................... 1

II.  LEGAL STANDARD ................................................................................. 2

III.  OVERVIEW OF THE FDCPA ................................................................. 3

IV.  CLAIMS FOR VIOLATION OF THE ROSENTHAL ACT AND
    FDCPA ARE PROPERLY PLEAD ........................................................ 4

V.  BARCLAY'S MOTION SHOULD BE DENIED BECAUSE THE
    LITIGATION PRIVILEGE DOES NOT BAR ROSENTHAL ACT
    CLAIMS ................................................................................................... 5

VI.  MOORE LAW GROUP'S MOTION SHOULD BE DENIED
    BECAUSE THE LITIGATION PRIVILEGE DOES NOT BAR FDCPA
    CLAIMS ................................................................................................... 7

VII.  DEFENDANTS' MOTIONS TO DISMISS SHOULD BE DENIED
    BECAUSE PLAINTIFF HAS SUFFICIENTLY PLED THAT
    DEFENDANTS VIOLATED THE CALIFORNIA ROSENTHAL ACT
    AND FDCPA BY FILING SUIT ON TIME BARRED DEBT ........................... 8

VIII.  DEFENDANTS' CREDIT CARD COLLECTION SUIT WAS TIME
    BARRED WHEN FILED BECAUSE DELAWARE LAW APPLIED .............. 9

A.  California Honors Foreign Choice of Law Clauses .......................................10

1.  The first Step is to Determine Whether the Asserted Causes of Action Fall
    within the Scope of the Choice of Law Clause ....................................................10

2.  The Broad Choice of Law Provision at issue Here Encompasses the
    Common Counts Claims Pursued by Barclays Bank on the credit card debt ......12

3.  The Government Interest Test does not Apply Here.......................................12

4.  The Other Criteria of the Nedlloyd Lines Test Warrant Application of
    Delaware Statute of Limitation. ..........................................................................14

B.  Barclay Bank's Claims Were Time Barred Under Delaware When It Filed

the State Court Collection Action .................................................. 16

C.  Plaintiff's Allegations that her relationship with Barclay Bank Never

Changed Supports her Claims that the Collection Action was Time-Barred

and Negates The Moore Law Groups Claim that the Common Counts

Created a "New Contract" ............................................................... 17

IX.  DEFENDANT THE MOORE LAW GROUPS INAPPRPIATELY

PRESENTS CONTRARY EVIDENCE REGARDING THE ALLEGED

FALSE PROOF OF SERVICE .............................................................. 21

III.  DEFENDANT BARCLAYS BANK MAY BE HELD DIRECTLY LIABLE

AND VICARIOUSLY LIABLE FOR THE CONDUCT OF ITS

ATTORNEYS REGARDING THE FALSE PROOF OF SERVICE .................. 22

X.  IF DELAWARE LAW DOES NOT APPLY, THE MONEY LENT CLAIM

IS STILL BARRED BY CALIFORNIA'S TWO YEAR  STATUTE OF

LIMITATIONS ................................................................................. 24

XI.  CONCLUSION ................................................................................. 25

CERTIFICATE OF SERVICE ..................................................................... 26

# **TABLE OF AUTHORITIES**

**Cases**

*Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990) ................2

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ...................................2

*Boon v. Professional Collection Consultants*, 978 v. F. Supp. 2d 1157 (S.D. 2013)........................................................................................................7, 16

*Bowden v. Robinson* (1977) 67 Cal App 3d 705, 718 .........................................29

*Broam v. Bogan,* 320 F.3d 1023, 1028 (9th Cir. 2003)........................................2

*Burdick v. Palisades Collection LLC*, No. EDCV 07-1057-VAP (OPx), 2008 WL 80943, *3 (C.D. Cal. Jan. 3, 2008)........................................................................3

*Butler v. Resurgence Financial, LLC,* 521 F Supp 2d 1093, 1095 (C.D. Cal, Nov 6, 2007)........................................................................................................6

*Carlton v. Hertz Corp.,* 2013 W.L. 394894, Case number 12-07178-JGB-MRWx (C.D. Cal. Jan. 28, 2013)........................................................................15

*Clark v. Capital Credit & Collection Services, Inc.,* 460 F.3d 1162, 1171-72 (9th Cir. 2006) ........................................................................................................4

*Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir.1993)..................................4

*De La Cruz v. Toomey*, 582 F.2d 45, 48 (9th Cir. 1978)........................................2

*Derr v. Kimball, Tirey and St. John, LLP,* Case No. 12-cv-1257 DMS (WMC), (S.D. Cal. 8/14/2013) ........................................................................9

*Dickman v. Kimball, Tirey and St. John, LLP, Case No.*, 982 F.Supp.2d 1158, 1161-1162 (2013)........................................................................9

*Doshay v. Global Credit and Collection Corporation,* 796 F.Supp.2d 1301, 1304 (D.Colo. 2011). ........................................................................26

*Fall v. Lincoln Mortgage Co* (1931) 115 Cal App 651, 654...............................29

*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 460......................29

*Filmservice Laboratories, Inc. v. Harvey Bernhard Enterprises, Inc.,* 208 Cal App. 3d 1297, 1308  (1989) ........................................................................21, 22

*Fox v. Citicorp. Credit. Servs., Inc.* 15 F.3d 1507, 1516 (9th cir. 1994) .............27

*Franck v J.J. Sugarman Co* (1952) 40 Cal 2d 81, 90............................................30

*FTC v. Colgate-Palmolive Co.,* 380 U.S. 374, 393, (1965) ....................................4

*Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1543 .....................................................................12, 18

*Heathman v. Portfolio Recovery Assocs., LLC,* Case No. 12-CV-201-IEG (RBB) at *9 (S.D. Cal. 2013)..................................................................................28

*Heintz v. Jenkins,* 514 US 291, 295 (1995). ..........................................................9

*Henderson v. Security National Bank,* 72 Cal. App. 3d 764, 769-771 (1977).....28

*Hofer v. California Business Bureau, Inc*  Case 10-cv-1017, (S.D. Cal Feb 9, 2012)........................................................................................................11

*Hurtado v. Superior Court,* 11 Cal. 3d 574, 581 (1974) ......................................15

*Huy Thanh Vo v. Nelson & Kennard,* 931 F. Supp. 2d 1080, 1090 (E.D.Cal. 2013)........................................................................................................27

*In re Marvel Entertainment Group, Inc* (D. Delaware, 2002) 273 BR 58, 73.....20

*Irwin v. Mascott,* 112 F. Supp. 2d 937, 962-963 (N.D. Cal. 2000).......................9

*Jaramillo v. JH Real Estate Partners,* Inc. (2003) 111 Cal.App.4th 394, 399 ....17

*Kimber v Federal Financial Corp.,* 668 F. Supp 1480 (M.D. Ala 1987). ...........10

*Kingdom of Sweden v. Nowacki,* Case No. 14-CV-1259-H-NLS, *6 (C. D. Cal. 8/28/2015) ................................................................................................19

*Komarova v. National Credit Acceptance* (2009) 175 Cal App 4th 324 ...........7, 8

*Maggio, Inc. v. Neal* (1987) 196 Cal.App.3d 745, 752–753 ...............................23

*Mayhew v. Benninghoff* (1997) 62 Cal. Rptr.2d 27, 32.......................................17

*McCollough v. Johnson, Rodenberg & Leuinger,* 610 F. Supp 2d 1247, 1259 (D. Mont. 2009)................................................................................................11

*Meso Scale Diagnostics, LLC et al v Roche Diagnostics GMBH et al* (Del 2013) 62 A 3d 62, 77. ..........................................................................................20

*Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 464 (1992)....12, 13, 14, 17

*Oei v. North Star Capital Acquisitions, LLC* (CD Cal, Nov 9, 2006) 486 F Supp 2d 1089, 1100-1101. ...............................................................................passim

*Ostereicher v. Alienware Corp.,* 502 F.Supp.2d 1061, 1068 (2007)..............16, 19

*Paulsen v. CNF, Inc.,* 559 F.3d 1061 (2009).........................................................15

*People v. Persolve*, 218 Cal App 4th 1267, 1276-1277 (2013)..........................7, 8

*Pollace v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 405 (3rd Cir. 2000)...............27

*Powell v. Godsmith*, 152 Cal. App. 3d 746, 750-751 (1984) ...............................27

*Resurgence Financial, LLC v. Chambers,* 173 Cal. App. 4th Supp 1, 10 (App. Div. Sup. Ct. Santa Clara 2009)..................................................................18, 19

*Robin v. Smith* (1955) 132 Cal App 2d 288, 292......................................................30

*Sial v. Unifund Financial Services, LLC* 2008 US Dist Lexis 66666 (SD Cal, Aug 28, 2008)....................................................................................................7

*Silberg v. Anderson*, 50 Cal. 3d 205, 215 (1990) .................................................8

*Simpson v. Nickel,* 450 F.3d 303, 306 (7th Cir.2006) .......................................3, 5

*Skaff v. Meridien North America Beverly Hills, LLC,* 506 F.3d 832, 839 (9th Cir. 2007).........................................................................................................2

*Smith v. National Credit Systems, Inc.*, 807 F.Supp.2d 836 (D.Az. 2011). .........25

*Smith, Valentino & Smith, Inc. v. Superior Court,* 17 Cal.3d 491(1976)............12

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512-15 (2002) ..................................3

*United States v. Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981) .......................2

*Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906, 916 (2001)....12, 15

**Statutes**

15 U.S.C. § 1692(a) ..............................................................................................4

15 U.S.C. § 1692k.................................................................................................4

15 U.S.C. section 1692d .......................................................................................5

15 U.S.C. section 1692e .............................................................................5, 10, 11

15 U.S.C. section 1692f.........................................................................................6

*Ashland Chemical Comp. v. Provence* (1982) 129 Cal.App.3d 790, 794...........29

Cal. Civ. Code section 1654 ............................................................................17

California Civil Code section 1788.5, subdivision (a) ...........................................1

Civil Code section 1788.15...........................................................................6, 27

Civil Code section 1788.17................................................................................5

Code Civ. Proc., 339[1] ...................................................................................30

Delaware Code §8106.......................................................................................18

Delaware Code, Title 10, Chapter 81, § 8106(a)................................................19

*See* Cal. Civil Code section 2332 .....................................................................27

**Other Authorities**

Cal. Rule of Prof. Resp., Rule 3-500 .................................................................29

Restatement Second Agency, Sec. 381. .............................................................29

Cal. Rule of Prof. Resp., Rule 3-510 .................................................................29

# I.  INTRODUCTION

Plaintiff has alleged a claim against Defendant Barclays Bank, N.A.  for violation of the California Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") and against The Moore Law Group for violation of the Federal Fair Debt Collection Practices Act (the "FDCPA") based on their filing of a credit card collection action in the San Diego Superior Court.  The allegations of the complaint explain in detail that Defendants violated the FDCPA and Rosenthal Act by attempting to collect on a time barred credit card debt and attempting to pursue a judgment against Plaintiff based on a false proof of service.

The facts alleged in the complaint when viewed through the lens of California's choice of law rules establish that the complaint filed in State Court was barred by Delaware's three year statute of limitations as a result of the Delaware choice of law clause in the Cardmember Agreement of the credit card account. Furthermore, the cause of action for Money Lent in the state complaint was also barred by California's shorter two year statute of limitations.

The Complaint also alleges that Defendant Barclays violated California Civil Code section 1788.5, subdivision (a)[1] of the Rosenthal Act by continuing to collect based on the false proof of service after being presented with sufficient evidence to know that no personal service had actually been effected.   There are myriad violations mentioned in the complaint and only one is necessary for the court to find a well plead claim for violation of these statutes.  The Claims are not barred by California's litigation privilege.  The Moore Law Group attempts to dispute Plaintiff's allegations about the false proof of service, but this is not proper in a motion to dismiss which takes the allegations as true.  Finally, Barclays is directly

---

[1] The Civil Code section states:  " 1788.15.  (a) No debt collector shall collect or attempt to collect a consumer debt by means of judicial proceedings when the debt collector knows that service of process, where essential to jurisdiction over the debtor or his property, has not been legally effected.

1  liable for the Rosenthal Act violations alleged because it was the party that filed the
2  time-barred collection action.  Vicarious liability is also available due to Plaintiff's
3  allegations of an attorney client relationship from which the Court may infer an
4  agency relationship that meet the vicarious liability standard.

## II.  LEGAL STANDARD

5
6      A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of
7  the pleadings. *De La Cruz v. Toomey*, 582 F.2d 45, 48 (9th Cir. 1978). In evaluating
8  the motion, the court must construe the pleadings in the light most favorable to the
9  plaintiff, accepting as true all material allegations in the complaint and any
10  reasonable inferences drawn there from. (*See, e.g., Broam v. Bogan,* 320 F.3d 1023,
11  1028 (9th Cir. 2003).

12      While Rule 12(b)(6) dismissal is proper only in "extraordinary" cases, the
13  complaint's "factual allegations must be enough to raise a right to relief above the
14  speculative level..." *United States v. Redwood City,* 640 F.2d 963, 966 (9th Cir.
15  1981); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court should
16  grant 12(b)(6) relief only if the complaint lacks either a "cognizable legal theory" or
17  facts sufficient to support a cognizable legal theory. *Balistreri v. Pacifica Police*
18  *Dep't,* 901 F.2d 696, 699 (9th Cir. 1990).

19      The Ninth Circuit, in *Skaff v. Meridien North America Beverly Hills, LLC,*
20  506 F.3d 832, 839 (9th Cir. 2007), stated:

21          When enacted, Rule 8 eliminated the archaic system of fact pleading
22          found in the state codes of pleading applied by the federal courts
23          under the 1872 Conformity Act. Today, "[t]he only function left to be
24          performed by the pleadings alone is that of notice.

25  Where a complaint states numerous facts for an FDCPA claim, but did not specify
26  the sections of the Act allegedly violated by those facts, U.S. District Judge Phillips,
27  in *Burdick v. Palisades Collection LLC*, No. EDCV 07-1057-VAP (OPx), 2008 WL
28  80943, *3 (C.D. Cal. Jan. 3, 2008), stated:

For the purposes of a Rule 12(b)(6) motion, it is sufficient that the facts alleged support any valid claim, even if the complaint fails to enunciate which legal theory supports recovery. *Conley*, 355 U.S. at 45-46; *see also Crull v. GEM Ins. Co.*, 58 F.3d 1386, 1391 (9th Cir. 1995) (explaining that the failure to cite the correct statute in a complaint does not affect the merits of the claim; factual allegations are what matters).

"A plaintiff receives the benefit of 'any fact that could be established later consistent with the complaint's allegations.'" *Simpson v. Nickel*, 450 F.3d 303, 306 (7th Cir.2006) [hereinafter cited as "*Simpson*"]; *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-15 (2002) (notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims).

## III.  OVERVIEW OF THE FDCPA

In the FDCPA's findings and declaration of purpose, Congress found "abundant evidence of the use of abusive, deceptive and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).  Congress adopted the FDCPA because of the inadequacy of existing remedies for redressing the injuries to consumers caused by these practices as well as the competitive disadvantage to debt collectors who operate without such abuses. 15 U.S.C. § 1692(b) and (e).

In *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1171-72 (9th Cir. 2006) [hereinafter cited as "Clark"], the Ninth Circuit stated:

Most important, because the FDCPA is a remedial statute aimed at curbing what Congress considered an industry-wide pattern of and propensity towards abusing debtors, it is logical for debt collectors - repeat players likely to be acquainted with the legal standards governing their industry - to bear the brunt of the risk. [Footnote omitted] As we have oft repeated, it does not seem "unfair to require

that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *FTC v. Colgate-Palmolive Co.,* 380 U.S. 374, 393, (1965).

The Court in *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2nd Cir.1993), stated: "A single violation of § 1692e is sufficient to establish civil liability under the FDCPA. See 15 U.S.C. § 1692k (establishing civil liability for "any debt collector who fails to comply with any provision of this subchapter")." Thus, given the early stage of the case and no discovery having been exchanged, if the Court finds the complaint states a violation of any provision of the FDCPA, the Court should deny the motion to dismiss in its entirety. *See Simpson, supra,* 450 F.3d 303, 306.

## IV.  CLAIMS FOR VIOLATION OF THE ROSENTHAL ACT AND FDCPA ARE PROPERLY PLEAD

In regard to Plaintiff's claims for violations of the FDCPA against the Moore Law Group and for violations of the Rosenthal Act against Defendant Barclays Bank, Plaintiff has properly plead that Barclays Bank is a debt collector under the Rosenthal Act, The Moore Law group is a debt collector under the FDCPA, Plaintiff is a consumer under both statutes, who allegedly owes a consumer debt and that each Defendant has attempted to collect from her under the respective statute. None of this is disputed.

At a minimum, Plaintiff complaint adequately alleges that Defendant Barclays and the Moore Law Group has violated the following provisions of the FDCPA incorporated into the Rosenthal Act through Civil Code section 1788.17:

1.  Defendants violated 15 U.S.C. section 1692d  - (engaging in behavior, the natural consequences of which was to harass, abuse or oppress)  by engaging in protracted litigation for nearly 9 months to collect a time barred credit card debt, beginning with false claims of proof of service, requesting a default based thereon, refusing to vacate it, opposing motions to vacate it, insisting on going to trial

causing Plaintiff to prepare her defense and only dismissing the day before the scheduled trial date.

2. Defendants violated 15 U.S.C. section 1692e generally (false, deceptive or misleading statements) and 1692e(2)(A) (false representation of the character amount or legal status of a debt) and 1692e(10) (using false representation to collect or attempt to collect a debt) - by filing a complaint on time barred debt, which is a false representation that the debt is enforceable in court, by filing a false proof of service, claiming personal service occurred that never occurred, by requesting a default based thereon, which is a false representation that Barclays Bank was entitled to take a default.

3. Defendants violated 15 U.S.C. section 1692f (using unfair or unconscionable means to collect a debt) by prosecuting a suit for time barred debt, initially based on a false proof of service, and even after being apprised the claim was time barred refusing to dismiss until the day before the scheduled trial.

4. Defendants violated 15 U.S.C. section 1692f(1) (attempting to collect an amount not permitted by law) by attempting to collect time barred debt.

Furthermore, Plaintiff has alleged that Defendant Barclays Bank violated the Rosenthal Act at Civil Code section 1788.15 by attempting to collect the alleged debt from Plaintiff knowing that service of process had not been legally effected.

## V.  BARCLAY'S MOTION SHOULD BE DENIED BECAUSE THE LITIGATION PRIVILEGE DOES NOT BAR ROSENTHAL ACT CLAIMS

In 2006, the Central District of California held that California's litigation privilege does not bar claims under the Rosenthal Act. *Oei v. North Star Capital Acquisitions, LLC* (CD Cal, Nov 9, 2006) 486 F Supp 2d 1089, 1100-1101. In 2007, the Central District made the same holding in *Butler v. Resurgence Financial, LLC,* 521 F Supp 2d 1093, 1095 (C.D. Cal, Nov 6, 2007). In 2008, here in the Southern District of California, Judge Miller held that the litigation privilege did not apply to the Rosenthal Act. *Sial v. Unifund Financial Services, LLC* 2008 US Dist

1   Lexis 66666 (SD Cal, Aug 28, 2008).   In June of 2009 the California Court of

2   Appeal published its first opinion addressing the issue followed suit in *Komarova v.*

3   *National Credit Acceptance*, 175 Cal App 4th 324, 337-338 (2009) .  In 2014, a

4   second California appellate court found not only that the litigation privilege did not

5   apply to the Rosenthal Act, but that even 17200 claims based on violations of the

6   Rosenthal Act fell outside the reach of California's litigation privilege. *People v.*

7   *Persolve*, 218 Cal App 4th 1267, 1276-1277 (2013), cert denied.

8           *Komarova* and *People v Persolve* are the only California authorities on point

9   here, which have been followed by a string of federal district court decisions.

10   Defendant Barclays Bank relies upon *Boon v. Professional Collection Consultants*,

11   978 v. F. Supp. 2d 1157 (S.D. 2013) as contrary authority; however, there are a

12   number of reasons why that decision should not be followed.

13           The first is that it incorrectly reads the decisions in *Komarova* and *Oei* as

14   limited to situations involving only harassing telephone calls that were unrelated to

15   any pending litigation.  A close reading of these cases shows that both cases

16   involved allegations that the collector made the phone calls in connection with

17   pending litigation and, in *Komorova,* that the debt collector prosecuted a default

18   judgment in violation of Civil Code section 1788.15 subdivision (a).  (quoted in

19   footnote 1, supra). *Komarova, supra,* 175 Cl. App. 4th at 335.   That section

20   explicitly addresses conduct that could only occur in the course of litigation, e.g.

21   pursuing a judgment knowing that service of summons had not been completed.  *Id.*

22   at 338-339 ("The [litigation] privilege will inevitably conflict with claims under

23   Section 1788.15(a)")

24           The northern district held in *Oei* that the litigation privilege did not apply

25   where  the incessant communications were made after a lawsuit was filed about the

26   pending litigation in which a default judgment was taken, wages garnished and the

27   default judgment eventually vacated; the court held that the litigation privilege did

28   not bar the Rosenthal claim because to do otherwise "would effectively vitiate the

Rosenthal Act and render the protections it affords meaningless." *Oei, supra,* 486 F. Supp. 2d at 1100.

Second, the *Boon* decision does not mention the *People v. Persolve* decision, which dealt with conduct that included the filing of lawsuits and communications threatening legal action in court. The *People v. Persolve* decision further confirms that California's litigation privilege does not bar claims under the Rosenthal Act that are based on conduct or communications covered by California's litigation privilege. *Persolve, supra,* 218 Cal. App. 4th at 1271-1272. There is little real dispute anymore on the inapplicability of the litigation privilege to the Rosenthal Act.

The other authorities presented by Defendant are distinguishable as they are based on the same mistaken reasoning of *Boon*. The only California state authority cited by Defendant is *Silberg v. Anderson*, 50 Cal. 3d 205, 215 (1990). That decision did not involve the Rosenthal Act and although it outlines the general principals of California's litigation privilege, offers no reasoning that might support Defendant's position that the Rosenthal Act is barred by California's litigation privilege when the alleged violations occur in the context of litigation.

## VI.  MOORE LAW GROUP'S MOTION SHOULD BE DENIED BECAUSE THE LITIGATION PRIVILEGE DOES NOT BAR FDCPA CLAIMS

In 1995, the US Supreme Court ruled in *Heintz v. Jenkins* that the FDCPA covered litigation activities. *Heintz v. Jenkins,* 514 US 291, 295 (1995). It has been settled law in all fifty states since 1995 that the litigation privilege does not apply to claims under the FDCPA. In 2000, the Court in *Irwin v. Mascott* found that California's litigation privilege does not apply to FDCPA claims. *Irwin v. Mascott,* 112 F. Supp. 2d 937, 962-963 (N.D. Cal. 2000). In 2006, the Court laid out the rule for FDCPA claims and the litigation privilege in *Oei v. North Star Capital Acquisitions*, stating that "[i]t is well settled that the Supremacy Clause of the United States Constitution grants Congress the power to preempt state and local laws...As a result, it is equally well settled that California's litigation privilege does

1   not apply to federal causes of action, including FDCPA claims." *Oei v. North Star*

2   *Capital Acquisitions, LLC,* 486 F Supp 3d 1089, 1098(C.D. Cal. 2006).

3   Furthermore, in the case of *Derr v. Kimball, Tirey and St. John, LLP*, the Southern

4   District of California also agreed that California's litigation privilege did not apply

5   to claims under the FDCPA in a case brought against the Defendant in connection

6   with its conduct in the handling of another unlawful detainer case.  *Derr v. Kimball,*

7   *Tirey and St. John, LLP,* Case No. 12-cv-1257 DMS (WMC), (S.D. Cal. 8/14/2013);

8   this was followed in *Dickman v. Kimball, Tirey and St. John, LLP, Case No.*, 982

9   F.Supp.2d 1158, 1161-1162 (2013).

10   ## VII.  DEFENDANTS' MOTIONS TO DISMISS SHOULD BE DENIED

11   ## BECAUSE PLAINTIFFS HAVE SUFFICIENTLY PLED THAT

12   ## DEFENDANTS VIOLATED THE CALIFORNIA ROSENTHAL ACT  AND

13   ## FDCPA BY FILING SUIT ON TIME BARRED DEBT

14           The FDCPA, at 15 USC 1692e(2)(A) prohibits making a misrepresentation as

15   to the "character, amount or legal status of any debt." Claiming that a debt is

16   enforceable when it in fact is not because it is time barred is a clear

17   misrepresentation of the legal status of a debt.  The Court in *Kimber* found this to be

18   the case, and found that suit on any time barred debt is a per se violation of the

19   FDCPA. *Kimber v Federal Financial Corp.,* 668 F. Supp 1480 (M.D. Ala 1987).

20   The Ninth Circuit has consistently followed the reasoning in *Kimber*. As the Court

21   found in *McCollough*:

22           A debt collector violates the FDCPA by using the courts to attempt to
        collect a time-barred debt. *See Martinez v. Albuquerque Collection*
23        *Services*, 867 F.Supp. 1495, 1506 (D.N.M.1994)("A collection
        agency's attempts to collect on timebarred accounts violate the
24        FDCPA."); *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 393
        (D.De1.1991)("[T]he threatening of a lawsuit which the debt
25        collector knows or should know is unavailable or unwinnable by
26        reason of a legal bar such as the statute of limitations is the kind of
        abusive practice the FDCPA was intended to eliminate."). See also
27        *Kimber v. Federal Financial Corp.*, 668 F.Supp. 1480, 1487
28

(M.D.Ala.1987); *Thompson v. D.A.N. Joint Venture III L.P.*, 2007 WL 1625926 (M.D.Ala.). In Thompson, the court held that the defendant's failure to move to set aside the underlying state court default judgment after a summary judgment ruling that the underlying state court action violated the FDCPA because it was timebarred constituted an additional FDCPA violation. *Thompson* at *2.

*McCollough v. Johnson, Rodenberg & Leuinger,* 610 F. Supp 2d 1247, 1259 (D. Mont. 2009).  *See also Hofer v. California Business Bureau, Inc* Case 10-cv-1017, (S.D. Cal Feb 9, 2012) ("It is undisputed ...that filing suit to collect a time-barred debt violates the FDCPA").

The Rosenthal Act incorporates the FDCPA into its own provisions, which includes 15 USC 1692e(2)(A).  Courts in California rely upon federal authorities for purposes of applying the incorporated provisions of the FDCPA under the Rosenthal Act.  Therefore, filing suit and attempting to collect a time barred debt is as much a violation of the Rosenthal Act as it is the FDCPA.  This is undisputed by Defendants Barclay's Bank and The Moore Law Group, who focus instead on claiming that the debt that Defendant sought to collect by filing suit against Plaintiff in state court was not time barred.

## VIII.  DEFENDANTS' CREDIT CARD COLLECTION SUIT WAS TIME BARRED WHEN FILED BECAUSE DELAWARE LAW APPLIED

Plaintiff's complaint attaches the terms and conditions that applied to the underlying Barclays Bank credit card account at issue, which contains the choice of law provision, also quoted above that states Delaware law applies to the account. (See Complaint Exhibit 2)   The choice of law provision states, "THIS AGREEMENT AND YOUR ACCOUNT WILL BE GOVERNED BY THE LAWS OF THE STATE OF DELAWARE AND, AS APPLICABLE FEDERAL LAW." (Emphasis in original).  This is the only language in the detailed terms and conditions stated in all capital letters.

## *A.  California Honors Foreign Choice of Law Clauses*

California will generally enforce most foreign choice of law clauses.  *See Nedlloyd*, "No satisfying reason of public policy has been suggested why enforcement should be denied a forum selection clause appearing in a contract entered into freely and voluntarily by parties who have negotiated at arm's length." *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal.4th 459, 464 (1992), quoting *Smith, Valentino & Smith, Inc. v. Superior Court,*  17 Cal.3d 491, 495-496 (1976).  This general policy in favor of enforcement of foreign choice of law clauses extends to foreign statutes of limitations generally.  *Hambrecht & Quist Venture Partners v. American Medical Internat., Inc.* (1995) 38 Cal.App.4th 1532, 1543 ("Thus, California's conflict of laws principles treat the statute of limitations in the same manner as any other issue, and the courts of this state do not automatically apply California's statutes of limitations in every case.").

## 1.  The first Step is to Determine Whether the Asserted Causes of Action Fall within the Scope of the Choice of Law Clause

Under California law, where a party asserts a contractual choice of law clause, the Court must first determine whether the causes of action at issue fall within the scope of the choice of law provision.  *Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906, 916 (2001).  The leading case regarding this analysis is *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal. 4th 459.

In *Nedlloyd Lines B.V.*, the court reviewed a choice of law provision contained in a shareholder agreement that said, "This agreement shall be governed by and construed in accordance with Hong Kong law . . . "  *Id.* at 468-469.  The Court interpreted this language to cover a claim of breach of fiduciary duty, despite argument by the plaintiff that it was outside of the scope of the choice of law clause. The Supreme Court of California stated, "We hold a valid choice-of-law clause, which provides that a specified body of laws "governs" the "agreement" between the parties, encompasses all causes of action arising from or related to that agreement,

1
2
regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationship it creates."

3
4
The Supreme Court of California in *Nedlloyd* applied the choice of law provision broadly because

5
6
7
8
9
"The phrase "governed by" is a broad one signifying a relationship of absolute direction, control and restraint.  Thus, the clause reflects the parties' clear contemplation that "the agreement" is to be completely and absolutely controlled by Hong Kong law.  No exceptions are provided." *Nedlloyd, supra,* 3 Cal. 4th at 469.

10
11
The Supreme Court further justified this reading by applying common sense analysis regarding the rational business person:

12
13
14
15
16
17
18
19
20
21
"[w]hen a rational businessperson enters into an agreement establishing a transaction or relationship and provides that disputes arising from the agreement shall be governed by the law of an identified jurisdiction, the logical conclusion is that he or she intended that law to apply to all disputes arising out of the transaction or relationship.  We seriously doubt that any rational businessperson, attempting to provide by contract for an efficient and business-like resolution of possible future disputes, would intend that the laws of multiple jurisdictions would apply to a single controversy support this conclusion with important analysis that applies." *Id.*

22
23
24
25
26
27
A rational bank could be expected to operate just as rationally as the "rational businessperson".  In *Nedlloyd Lines,* the Supreme Court determined that the claim made by the plaintiff that California law should apply to the breach of fiduciary duty claim was "more likely the product of a post-dispute litigation strategy, not pre-dispute contractual intent."  The court said that if certain issues arising out of the contractual relationship were meant to be governed by different law, that should in

28

fairness to the parties be addressed by "explicit contract language specifying what jurisdiction's laws applies to what issues." *Id.* at 470.

**2.  The Broad Choice of Law Provision at issue Here Encompasses the Common Counts Claims Pursued by Barclays Bank on the credit card debt**

As in the *Nedlloyd* case, the Choice of law provision here says that Delaware law "governs" the "agreement".  But the language is even more expansive in that it states that Delaware law "governs" "your account" as well.  In light of the reasoning provided in *Nedlloyd* it seems plain that any claims to collect on sums owed on the "account" would also be governed by California law.  This follows from the plain interpretation given by the Court in *Nedlloyd* of the word "govern" of which Barclays Bank was surely on notice.  This is also consistent with other language in the Cardmember Agreement which confirms that the terms of the Agreement are to apply to the account even after termination of the account.

*Nedlloyd Lines* involved a business transaction between sophisticated parties.  The principles of Nedlloyd Lines should apply with even greater force here.  Here the Court has a credit card relationship between a very sophisticated bank chartered by the State of Delaware and headquartered there and a unsophisticated and relatively insignificant consumer who merely seeks to hold the Bank to the plain meaning of the terms of the detailed Cardmember Agreement which were no doubt drafted by a highly paid team of lawyers working for the Bank or its predecessor in interest.  Barclays Bank should be held accountable for the unambiguous language of its Cardmember Agreement electing Delaware law.

**3.  The Government Interest Test does not Apply Here**

Defendants Barclay's Bank and the Moore Law Group do not present any analysis regarding the scope of the choice of law provision and instead assert that the only test applicable here is California's "governmental interest test".  That is not correct.  Defendants fail to tell the Court that the government interest test is one of two tests used to resolve which law applies when parties disagree.  The first is the

analysis provided by *Nedlloyd Lines,* which applies where there is a contractual choice of law clause.  The second is the "governmental interest test" which according to the Supreme Court applies only "when there is no advance agreement on applicable law, but the action involves the claims of residents from outside California."  *Washington Mutual Bank v. Superior Court,* 24 Cal. 4th 906, 915 (2001).

Nearly all of the cases relied upon by Barclays Bank are inapposite because they did not involve an "advance agreement on applicable law".  *Paulsen v. CNF, Inc.,* 559 F.3d 1061 (2009) involved a claim for professional negligence to which the plaintiff's attempted to apply Oregon rather than California law.  *Id.* at 1080. *Hurtado v. Superior Court,* 11 Cal. 3d 574, 581 (1974) involved a wrongful death claim that implicated the laws of California and Mexico because the harm happened in California and the Plaintiffs were from Mexico.  The same is true of other cases cited.  *Carlton v. Hertz Corp.,* 2013 W.L. 394894, Case number 12-07178-JGB-MRWx (C.D. Cal. Jan. 28, 2013) (injury caused by alleged negligent stopping of rental car courtesy bus in Florida); *Kearney v. Salomon Smith Barney, Inc,* 39 Cal. 4th 95, 107 (2006) (class action for surreptitious recording of client telephone calls which put in issue whether California or Georgia law applied).  None of these cases involved a choice of law clause in a governing contract.  Naturally the "government interest test" was applied in all of them.

The only case cited by Defendant that involved a choice of law clause was *Ostereicher v. Alienware Corp.,* 502 F.Supp.2d 1061, 1068 (2007), but that case did not apply the "government interest test", it applied the test outlined in *Nedlloyd Lines* and *Washington Mutual Bank*.  *See id.* at 1065.

Even the *Boon* case cited by Defendant failed to do the analysis spelled out in detail by the California Supreme Court.  *Boon v. Professional Collection Consultants,* 978 F. Supp. 2d 1157, 1162-1163.  On that basis *Boon* is distinguishable as well.  *Boon* simply applies the government interest test without

even acknowledging that the existence of the choice of law provision requires additional analysis of its scope and application.  *Id.*

The language of the choice of law clause in this case is not ambiguous and is broadly worded.  The Supreme Court's interpretation of the work "govern" to cover all causes of action arising out of the contractual relationship would clearly mean that the choice of law provision at issue in this case covers the common counts claims asserted to collect on the credit card account which specifically referenced the credit card account.  Even if Barclays Bank or the Moore Law Group were to have some argument suggesting another interpretation, which they have not presented,  California law could and should interpret the clause against Barclays Bank as the party who drafted the contract and had superior negotiating authority. Cal. Civ. Code section 1654; *see Jaramillo v. JH Real Estate Partners*, Inc. (2003) 111 Cal.App.4th 394, 399; *Mayhew v. Benninghoff* (1997) 62 Cal. Rptr.2d 27, 32 (the doctrine of *contra proferentum* (construing ambiguous agreements against the drafter) applies with even greater force when the person who prepare the writing is a lawyer").

## 4.  The other Criteria of the Nedlloyd Lines Test Warrant Application of Delaware Statute of Limitation.

The test that *Nedlloyd Lines* describes as to whether a choice of law provision will be enforced is derived from the Restatement Second of Conflicts of Laws, section 187.  *Nedlloyd Lines* describes the test as requiring

1) a determination that either (a) the chosen state law has a substantial relationship to the parties or their transaction, or (b) there is a reasonable basis for for the parties choice; and

2) a determination that the application of the chosen state law is not contrary to a fundamental policy of the state of California, and if there is such  conflict a determination that California has a "materially greater interest than the chosen state".

1    *Nedlloyd Lines, supra,* 3 Cal. 4th at 465-466.  The allegations of the

2    complaint easily satisfy these requirements.  Barclays bank is a Delaware bank with

3    its headquarters in Delaware, which establishes a sufficient relationship between the

4    parties and Delaware law, to warrant enforcing the choice of law provision.  This

5    was in part the basis for the ruling in *Resurgence Financial, LLC v. Chambers,* 173

6    Cal. App. 4th Supp 1, 10 (App. Div. Sup. Ct. Santa Clara 2009), which applied

7    Delaware's statute of limitations to a credit card collection case like that at issue

8    here holding that "[a] party's incorporation in a state is a contact sufficient to allow

9    the parties to choose that state's law to govern their contract." *See also Hambrecht

10   & Quist Venture Par. v. Am. Med.,* 38 Cal. App. 4th 1532, 1546 (1995) (same).

11        The foreign statute of limitations at issue in *Hambrecht* was also Delaware

12   Code §8106, the same statute at issue here and in *Chambers*.  *Hambrecht* explained

13   its holding that doing so did not contravene any fundamental policy of the state of

14   California:

15        Further, we can discern no fundamental policy against applying a

16        foreign jurisdiction's statutes of limitations to claims brought within

17        California courts.  . . . .  In this case, the choice-of-law provision results

18        in the application of Delaware's three-year statute of limitations (Del.

19        Code Ann. tit. 10, § 8106 (1975)) to claims (for breach of contract and

20        declaratory relief) that otherwise would be governed by California's

21        four-year statute of limitations (Code. Civ. Proc., § 337, subd. 1). This

22        result does not conflict with any fundamental policy of California. If

23        the parties to a contract can shorten California's four-year limitations

24        period to three *months,* we perceive no obstacle to applying a foreign

25        state's three-*year* statute of limitations. Accordingly, the choice-of-law

26        clause is enforceable.

27   *Hambrecht*, 38 Cal. App. 4th at 1549.  *See Also Chambers, supra,* 173 Cal.

28   App. 4th Supp. 1, 11.     Defendant cites to *Oestreicher v. Alienware, Corp.,*

502 F. Supp. 2d 1061 (2007).  In that case the court, evaluated whether California or Florida law should determine the validity of a contractual class action waiver.  *Ostereicher* went through the *Nedlloyd* analysis and found that Florida law was contrary to a fundamental policy in California disfavoring class action waivers.  The analysis in *Ostereicher* therefore focused on whether California had a materially greater interest in the litigation.

      *Ostereicher* is inapposite here because here, under California law, it is generally accepted that a contractual provision selecting a shorter statute of limitations does not contravene a fundamental California policy.  As a result, there is no need to do the "material interest" analysis here.  The cases cited by Defendant Barclays Bank do not suggest otherwise.  In *Kingdom of Sweden v. Nowacki,* Judge Huff chose to apply the law of Sweden which was made applicable to a student loan made to the defendant by the Swedish government, finding that doing so did not violate any public policy.  *Kingdom of Sweden v. Nowacki*, Case No. 14-CV-1259-H-NLS, *6 (C. D. Cal. 8/28/2015).  The unpublished opinion from Ohio, does not provide any authority regarding California policy.

## B.  Barclay Bank's Claims Were Time Barred Under Delaware When It Filed the State Court Collection Action

Delaware Code, Title 10, Chapter 81, § 8106(a) provides that:

> (a) No action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, **no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise**, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant **shall be brought after the expiration of 3 years from the**

1  **accruing of the cause of such action**; subject, however, to the
2  provisions of §§ 8108-8110, 8119 and 8127.  (Emphasis added).

3  Under Delaware law, then, Barclays has three years from *accrual* of the cause
4  of action to bring suit.  Under Delaware law, "accrual" occurs "when the specific
5  acts of alleged wrongdoing occur."  *In re Marvel Entertainment Group, Inc* (D.
6  Delaware, 2002) 273 BR 58, 73.:

7  "[A] cause of action 'accrues' under *Section 8106* at the time of the
   wrongful act, even if the plaintiff is ignorant of that cause of action."
8  "The 'wrongful act' is a general concept that varies depending on the
9  nature of the claim at issue. For breach of contract claims, the wrongful
   act is the breach, and the cause of action accrues at the time of breach."
10 Breach is defined as a "[f]ailure, without legal excuse, to perform any
   promise which forms the whole or part of a contract."  *Meso Scale*
11 *Diagnostics, LLC et al v Roche Diagnostics GMBH et al* (Del 2013) 62
12 A 3d 62, 77.

13

14 As Plaintiff broke her promise by failing to pay, the wrongful act that
15 provides the trigger date of accrual of the three year statute of limitations for the
16 debt at issue, under Delaware Code §8106 is, at the latest, the first time Ms. Rodrigo
17 failed to pay when due, after his last payment.  Plaintiff alleges that the last payment
18 was made on May 2, 2011, which is nearly four years prior to the filing of the State
19 Court collection action on April 8, 2015.  Thus, the three year statute of limitations
20 elapsed before the State Court collection action was filed rendering it time barred.
21 **C.  _Plaintiff's Allegations that her relationship with Barclay Bank Never Changed_**
22 **_Supports her Claims that the Collection Action was Time-Barred and Negates The_**
23 **_Moore Law Groups Claim that the Common Counts Created a "New Contract"_**
24 Barclays Bank's common counts causes of action in the State Court collection
25 action are governed by the Delaware statute of limitations because they are based
26 entirely on the credit card account that is governed by the Cardmember Agreement
27 which declared subject to Delaware law as explained above.  There was never a
28 change in the relationship after the last payment or charge off that would warrant

Defendants in claiming that the Cardmember Agreement was discarded and an entirely new "account stated" created, as claimed by Defendant the Moore Law Group.  Plaintiff's Complaint alleges in paragraph 33 that the relationship never changed from an open book credit card account arrangement governed by the Cardmember Agreement.  Plaintiff's Complaint alleges that Barclay's Bank never gave any notice to Plaintiff that the Account was going to change or did change or that the Cardmember Agreement ceased applying.  (See Complaint Paragraph 32)

These facts are significant under California law.  The California Court of appeals has rejected the idea that a plaintiff can get around the statute of limitations that bars a contract claim by asserting a "common count" where the "common count" arises out of the same basic transaction and relationship.  *Filmservice Laboratories, Inc. v. Harvey Bernhard Enterprises, Inc.,* 208 Cal App. 3d 1297, 1308  (1989).  The assertion of common counts without any new facts or changes since the original credit card account relationship was created and terminated, cannot revive the debt claim which is otherwise barred by Delaware's statute of limitations.  *Id.*

In *Filmservice Laboratories, Inc.*, the Court analyzed whether common count claims for open book and account stated were barred by the statute of limitations for the oral contract upon which the common counts were based, which had been alleged in the first complaint, but which was subsequently dropped after a successful demurrer and replaced with open book and account stated causes of action.  The Court held that these common counts claims were barred by the two year statute stating,

> "Both common counts in the first and second causes of action are
> based on the same basic facts as the oral contract cause of action, i.e.,
> the failure of Producers to pay the sum of $39,115.84.  . . . no facts
> have been alleged which give rise to any reasonable inference that the
> oral contract was superseded by an open book account or account

stated agreement.  The mere existence of two invoices addressed to Producers and prepared by Filmservice, . . .[attached] to the third amended complaint, do not evidence such accounts.  Those invoices simply memorialize the oral contract." *Filmservice, supra,* 208 Cal. App. 3d at 1307.

Just as *Filmservice* found that the original oral contract was never supplanted by an open book account or account stated, this Court should reject any claim that the assertion of these common counts is a basis for dismissing Plaintiff's Complaint. Plaintiff's allegations are sufficient to establish that the credit card account government by Delaware law and its statute of limitations were never supplanted by any new kind of new relationship.

As in *Filmservice*, Defendants cannot turn their untimely claim on the credit card account into a timely claim by merely asserting common counts claims. *Id.* at 1308.  In fact, a review of the state court complaint attached as Exhibit 1 to Plaintiff's Complaint herein does not allege any facts suggesting there was a new relationship or explaining why the detailed Cardmember Agreement no longer applies.

Furthermore, the facts alleged in Plaintiff's Complaint here that the relationship she had with Barclays Bank never changed are also important under the Federal Truth in Lending Act, which requires that any significant changes in the terms and conditions of an open ended consumer credit card account be sent in writing.  12 CFR 226.9(c)(2).  Clearly, the change involved in a complete cancellation of the detailed cardmember agreement would be a "significant change" requiring some sort of written notice.  The allegation that no such notice was ever given is further support that Delaware's statutes of limitation applied to bar Barclays common counts claims to collect on the account.

Furthermore, the elements of an "account stated" in California require that the formation of an account stated have a degree of finality:

Actions on accounts stated frequently arise from a series of transactions which also constitute an open book account. However, an account stated may be found in a variety of commercial situations. The acknowledgement of a debt consisting of a single item may form the basis of a stated account. **The key element in every context is agreement on the final balance due.**" (*Maggio, Inc. v. Neal* (1987) 196 Cal.App.3d 745, 752–753, internal citations omitted.)

In credit card collection cases there is never any final balance expressed. Typically the last statement sent is a periodic statement no different than any other sent previously. There is nothing about the document that indicates a final balance has been struck.

Further, each statement put Plaintiff on notice that the Cardmember Agreement continued to apply to "your account" because every single statement that was sent by Defendant Barclays' Bank to Plaintiff, including the last statement, concluded by directing Plaintiff to "Please refer to your Cardmember Agreement for additional information". (Compl. Para. 31)

The Cardmember Agreement itself reveals that Barclays Bank never intended to for a new "account stated" that dispensed with the terms and conditions to be created upon delivery of the last statement. In the event of default and charge off, the Agreement states, "your account will be in default and we may demand immediate payment of the entire amount you owe us if: 1) in any month we do not receive your Minimum Payment Due by the Payment Due Date; . . . 3) you fail to comply with this Agreement; . . . 6) we believe in good faith that the payment or performance of your obligations under this Agreement is impaired for any other reason." (See Paragraph 34)   The Cardmember Agreement, further demonstrates it applies after the event of default, stating, "As permitted by applicable law, you agree to pay all collection expenses actually incurred by us in the collection of amounts you owe under this Agreement (including court or arbitration costs and the

fees of any collection agency to which we refer your Account and, in the event we refer your Account after your default to an attorney who is not our regular salaried employee you agree to pay the reasonable fees of such attorney."  (See Paragraph 35 and Exhibit 2 at page 13 of 39)

In fact, the Cardmember Agreement specifically states that "termination of your privileges under this Agreement . . . will not affect existing obligations under this Agreement or your liability for all charges posted to your Account . . ."  (Exhibit 2, page 14 of 39 - "Termination")  Importantly, "obligations" are distinguished from "your liability" supporting the reasonable and unambiguous interpretation that the other terms of the Cardmember Agreement continue to apply after the charge off date, not just the fact that the cardholder owes the money.

Finally, the Cardmember Agreement says that Barclays may report about the debt to the credit reporting agencies, which by law allow reporting of delinquent debts up to eight and a half years after a debtor fails to pay what is claimed owed. (See Exhibit 2, page 15 of 39)  If the Cardmember Agreement had somehow been invalidated by the creation of an "account stated" all credit reporting would have to cease and that is never the case in credit card collections.  That fact could easily be added to the complaint here if necessary.

The Moore Law Group's proposed fiction of an "account stated" which was never formed and never existed and is contradicted by Barclays own Cardmember Agreement is not a valid basis for dismissing Plaintiff's Complaint.

## IX.  DEFENDANT THE MOORE LAW GROUPS INAPPRPIATELY PRESENTS CONTRARY EVIDENCE REGARDING THE ALLEGED FALSE PROOF OF SERVICE

The Court's review of a motion to dismiss must assume that the well plead facts of the complaint are true.  One of those facts is that no personal service occurred in Oceanside and that therefore the proof of service filed with the Court by the Defendants was false.  The filing of the false proof of service, requesting a

default based thereon and then subsequently refusal to vacate the default erroneously entered are among the actions by the Moore Law Group in connection with the false proof of service that subject it to liability.  However, "The Act [FDCPA] is a strict liability statute; violations of the Act do not need to be intentional to be actionable." *Smith v. National Credit Systems, Inc.*, 807 F.Supp.2d 836, 840 (D.Az. 2011). "Because the FDCPA "is a "strict liability statute," Plaintiff need only demonstrate "one violation of its provisions" to be entitled to a favorable judgment." *Doshay v. Global Credit and Collection Corporation,* 796 F.Supp.2d 1301, 1304 (D.Colo. 2011).   Thus, the Moore Law Groups' claims about what it knew or did not know or believe are not germane at this stage of the litigation, and even if they were, are irrelevant to whether it is liable for violations of the FDCPA.

## III.  DEFENDANT BARCLAYS BANK MAY BE HELD DIRECTLY LIABLE AND VICARIOUSLY LIABLE FOR THE CONDUCT OF ITS ATTORNEYS REGARDING THE FALSE PROOF OF SERVICE

Plaintiff has alleged a claim against Barclays Bank for direct liability under the Rosenthal Act.  Barclays Bank does not dispute that the alleged filing of a time barred claim subjects it to direct liability under the Rosenthal Act -- it disputes merely that the causes of action were not time barred.  With respect to the false proof of service and refusal to vacate the default entered when its attorneys were presented with sufficient evidence informing them that personal service never occurred, Barclays Bank claims that it cannot be held vicariously liable.  Plaintiff has noticed that paragraphs 40, 41, 43 and 44 inadvertently use "Defendant" in the singular, which it should have been stated in the plural.  This may be cause for Barclays Banks concern and if it is can easily be corrected in an amended pleading. Nevertheless, the Court may infer from the fact of the attorney client relationship alleged between Barclays and the Moore Law Group that Barclays had sufficient control over the Moore Law Group's conduct to warrant holding it vicariously liable for its actions due to the fiduciary duties owed by the Moore Law Group to

Barclays.  See *Oei v. N. Star Capital Acquisitions, LLC*, 486 F.Supp.2d 1089, 1095 (C.D. Cal. 2006) (California relies upon the Restatement Second of Agency, which says that attorneys are agents under the control of their clients because they are fiduciaries and owe the basic obligations of agency, loyalty and obedience); see also *Huy Thanh Vo v. Nelson & Kennard,* 931 F. Supp. 2d 1080, 1090 (E.D.Cal. 2013) (holding that U.S. Bank can be held vicariously liable under the Rosenthal Act for conduct of the law firm that represented it in the collection action).  Debt Collectors have been held vicariously liable for the conduct of their attorneys under the FDCPA.  *See e.g. Fox v. Citicorp. Credit. Servs., Inc.* 15 F.3d 1507, 1516 (9th cir. 1994) (holding that "Congress intended the actions of an [collection] attorney to be imputed to the client [creditor/alleged debt collector] on whose behalf they are taken").   These same principles apply to the Rosenthal Act.

Further, the claim under Civil Code section 1788.15(a) requires a finding of knowledge that the summons was not personally served that can be met based on the agency relationship.  Under California law, the knowledge of agents is imputed to the principal.  *See* Cal. Civil Code section 2332: "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." *See also, Powell v. Godsmith*, 152 Cal. App. 3d 746, 750-751 (1984) ("an agent is under a duty to inform his principal of matters in connection with the agency which the principal would desire to know about. (Rest.2d, Agency sec. 381.) Even if he fails to do so, the principal will in most cases be charged with such notice. . . . Notice to an agent in the course of a transaction is constructive notice to the principle, and it will not avail the latter to show that the agent failed to communicate to him what he was told. . . . This constructive notice, when it exists, is irrebutable. It is not merely prima facie evidence, for then it would be rebutted".)

The attorney client relationship is a confidential one in which the attorney is obligated to regularly communicate with his/her client.  *See* Cal. Rule of Prof. Resp.,

Rule 3-500 regarding significant developments and Rule 3-510 regarding settlement offers.  Entry of a default against Defendant and a subsequent motion to vacate that default are "significant developments" in the case that should have triggered the duty to communicate from which Defendant Barclay's Bank may be inferred to have ratified Defendants' opposition to the motion to vacate.

The conduct that violated Civil Code section 1788.15 was the filing of the oppositions to Plaintiff's motions to vacate the default that was entered.  They were oppositions by Barclay's Bank, not by their attorneys, although they may have been drafted by the attorneys.  Barclays Bank is the entity taking action in Court.  It can and should be held accountable directly for such actions.  *See e.g. Heathman v. Portfolio Recovery Assocs., LLC,* Case No. 12-CV-201-IEG (RBB) at *9 (S.D. Cal. 2013) (debt collector can be held directly liable for filing in court because it was the party who actually filed the suit).

Finally, liability under the Rosenthal Act for actual damages is strict liability.  California law does not require any knowledge or ratification in order to support a finding of vicarious liability for violations of strict liability statutes.  *Henderson v. Security National Bank,* 72 Cal. App. 3d 764, 769-771 (1977) (finding bank liable for damage caused by wrongful repossession that was a conversion under the law).

## X. If Delaware Law Does not Apply, the Money Lent Claim is Still Barred by California's Two Year  Statute of Limitations

Under *Ashland Chemical Comp.,* where the court finds a valid contractual choice of law provision, California will only apply its own statute of limitations if shorter.  *Ashland Chemical Comp. v. Provence* (1982) 129 Cal.App.3d 790, 794.  Therefore, the Money Lent cause of action should also be barred by California's shorter two year statute of limitations.  "Money Lent" is based upon the theory of *assumpsit.  See Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 460 ("In the common law action of general assumpsit, it is customary to plead an

indebtedness using 'common counts.').  This a further basis upon which Defendants may be found to have violated the FDCPA and Rosenthal Act.

Courts apply Code of Civil Procedure §339's two year statute of limitations at to *assumpsit* claims such as Money Lent.  *Bowden v. Robinson* (1977) 67 Cal App 3d 705, 718 see also *Fall v. Lincoln Mortgage Co* (1931) 115 Cal App 651, 654 ("Ordinarily an action for money had and received must be commenced within two years after the money is received.")  see also *Franck v J.J. Sugarman Co* (1952) 40 Cal 2d 81, 90 ("…if we assume the two- year period applies, as for money had and received (Code Civ. Proc., 339[1]….") See also *Robin v. Smith* (1955) 132 Cal App 2d 288, 292. (noting money lent claim undoubtedly eliminated for the obvious reason that it was vulnerable to the two-year statute of limitation) :

## XI.  CONCLUSION

The Complaint raises a legally and factually sufficient claims pursuant to the FDCPA and the Rosenthal Act.  As a result, Defendants' motions to dismiss should be denied or in the alternative, if there are defects, Plaintiff should be allowed an opportunity to correct them.          Respectfully submitted,

DATED: 7/1/2016                    ___/s/ Daniel Lickel, Attorney for Plaintiff_____

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, whose address appears below, certify:

  That I am, and at all time hereinafter mentioned was, more than 18 years if age and not a party in this action;

  That on 7/1/2016, I served a true and correct copy of the attached OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO 12(B)(6) and this Certificate of Service via the Court's Notice of Electronic Filing System and noticing procedures with  electronic delivery addressed as follows:

  a.  Ramin Mahdavi  at   rmahdavi@collectmoore.com for Defendant

  The Moore Law Group;

  b.  Raymond Y. Kim at    rkim@reedsmith.com,

  pkeen@reedsmith.com for Defendant Barclays Bank Delaware

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed in San Diego CA.


DATED:  7/1/2016   By:   /S/ Daniel Lickel
        DANIEL LICKEL,  Attorney for Debtor